**Isadore HODGES, Jr., and Andrew Lewis, Jr., Plaintiffs in Error,**

v.

**STATE of Tennessee, Defendant in Error.**

Court of Criminal Appeals of Tennessee.

July 31, 1972.

On Petition to Rehear Jan. 12, 1973.

Certiorari Denied by Supreme Court March 5, 1973.

Hugh W. Stanton, Sr., Memphis, for plaintiffs in error.

David M. Pack, Atty. Gen., Phillip W. Brooks, Asst. Atty. Gen., Nashville, Thomas F. Graves, Asst. Dist. Atty. Gen., Memphis, for defendant in error.

DWYER, Judge.

## OPINION

From a judgment imposed on a jury's verdict of guilty of murder in the perpe-

tration of rape, with a sentence of death by electrocution, the two defendants at the trial through the public defender have seasonably perfected this appeal.

Defendants primarily urge here three assignments of error: the evidence does not support the verdicts; the trial court erred in not granting a severance; and lastly the defendant Hodges was prejudiced by not being allowed to plead guilty. Ancillary to these assignments on appeal we find in the motions for new trial grounds which deal with a search question, the constitutionality of the death sentence, and the court's statement to the jury on voir dire about the death sentence if there were no mitigating circumstances.

■ The facts from our review of this record reflect one of the most revolting crimes that has been our unfortunate task to review in better than twenty years devotion to our criminal jurisprudence. However, odious individuals are not governed by one law and the remaining citizens by another; all are protected by the same general law of the land. See Vanzant v. Waddel, 10 Tenn. 260, 270.

With the above rule in mind we will narrate the facts as we have found them from this voluminous record. See Hargrove v. State, 199 Tenn. 25, 28, 281 S.W. 2d 692.

On Sunday morning June 14, 1970, the body of the decedent, a woman of about sixty years of age, was found in an abandoned church on Turley Street in the City of Memphis. One eye had been knocked from its socket, the entire face was covered with tears, abrasions and contusions. All of the upper portion of the torso was in like condition. Her nose was broken, as was the left jaw, the left collar bone, and six ribs on the left side, consistent with having been stomped and hit with a brick. A large laceration was found in the wall of the vagina vault that the medical examiner related was consistent with being inflicted by a kick used to strike a large quart bottle which was found inserted in the vagina. This wound caused profuse internal as well as external bleeding. The autopsy revealed no sperm. Death was caused by bruises to the surface of the brain. There was a blood level alcohol content of .27 percent, which reflected decedent was under the influence.

There were at the scene drag marks from the street to the inside of the church. Noted alongside of these drag marks were footprints resembling boots, with cleat marks also apparent. On the deceased's abdomen such a footprint was discernible.

There were six female witnesses who testified they had seen on Saturday night the two defendants together on Beale Street, a few blocks removed from the church. The proof developed that the two defendants accosted and grabbed two members of this group who broke away and entered a store. These witnesses later observed the decedent being accosted by the defendants, and one related that she saw decedent on the ground in front of the church. They all testified they noted the two defendants swing the decedent by her arms and feet and throw her on the steps of the church. The witnesses fled when viewing this event. They related that later the same evening they saw the two defendants in a night club, and noted that they had changed clothing.

The defendants were arrested the next day on Sunday, June 14, 1970, and on June 15, gave oral statements incriminating each other. They were then confronted with each other and both gave written statements inculpating themselves in this heinous crime. At the time of the oral statements Lewis stated he had the same undershorts on that he was wearing at the time of the crime. These shorts reflected a spot of blood identified as human in origin. A search of Hodges' room reflected articles of clothing, consisting of muddy boots with cleats and a shirt, trousers, and shorts which were spotted with human blood. In their statements each defendant states the

other had sexual intercourse with the decedent. Hodges' statement admits his own attempted intercourse. Lewis' statement admits his own intercourse. Each stated the other put the bottle in deceased's vagina.

■ We will discuss first the assignment of error contending that the trial court erred in denying a severance. This is a matter of discretion for the trial court and that discretion will not be disturbed unless we find from the evidence that it was abused. See Hunter v. State, 222 Tenn. 672, 440 S.W.2d 1, 6. Defendants predicate this assignment principally upon Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476. The argument notes that Lewis testified and Hodges did not. They then reason that Lewis was deprived of his right of confrontation through cross-examination of Hodges. We note that both gave incriminating statements orally and apart and then written incriminating statements in each other's presence. The learned trial judge held out of the presence of the jury hearings on the admissibility of these statements. The officers testified that all of the *Miranda* admonitions were given to the defendants and that after a full awareness and acknowledgment of such the defendants made statements. The defendants testified and denied the statements contending force, threats and coercion were used upon them. The learned trial judge found the confessions were made and taken in a full compliance of *Miranda*. His findings hereon are given the weight of a jury's verdict. See Bratton v. State, Tenn.Cr.App., 477 S. W.2d 754, 756. We see no reason to disturb this ruling and find it is supported by the evidence. The statements are incriminating and accusatory of one defendant to the other's benefit. In short, they each try to alleviate their personal culpability to the other's detriment. The trial court found the statements competent to go to the jury, and required that any reference to Lewis in Hodges' statement was to be omitted

and blank substituted and the same regarding Lewis' statement relating to Hodges.

■ The trial judge instructed the jury as to receipt of these confessions that the statement of each defendant should not be considered as to the other defendant. Unlike in *Bruton* and its progeny, here both defendants confessed and implicated themselves in the crime. In other words, prior to Lewis testifying his statement as well as Hodges' statement had been submitted to the jury. We hold therefore that Lewis' assignment is outside the ambit of Bruton v. United States, supra. It is true that Hodges did not testify and Lewis was not able to cross-examine him. But under the facts and circumstances where both had incriminated themselves, the admission of the non-testifying codefendant's statement, purged of Lewis' name, was not error. In *Bruton* the devastating effect of Evans' statement to Bruton's cause was paramount, because there was minimal other evidence to implicate Bruton. But here the effect of Hodges' statement on Lewis' cause was seriously watered down by Lewis' own statement. See Levinson v. United States, 6 Cir., 405 F.2d 971, 987, 988, cert. denied, 395 U.S. 958, 89 S.Ct. 2097, 23 L. Ed.2d 744, and Schneble v. Florida, 405 U. S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340, decided March 21, 1972. The assignment concerning severance and the *Bruton* violation is overruled.

■ The defendants' statements were admitted with redactions as to the name of the respective defendants when they refer to the other. The assistant attorney general's use of Hodges' name in the statement of Lewis on cross-examination was error, see West v. Henderson, 6 Cir., 409 F.2d 95, but harmless, see Schneble v. Florida, supra.

■ We now turn our attention to the assignment that Hodges wished to plead guilty and was prevented from doing so, to his prejudice. With this we do not agree.

In the record it appears that an offer of punishment was made by the attorney general contingent on both pleading guilty, which offer collapsed when Lewis would not agree. However, the State has a right to jointly try defendants. See Woodruff v. State, 164 Tenn. 530, 538, 539, 51 S.W. 2d 843. The assignment is overruled.

 Defendants next contend that the evidence is insufficient to support the verdict because the offense of rape was not proven. They contend that the corpus delicti cannot be proven by their confessions alone. See King v. State, 187 Tenn. 431, 434, 215 S.W.2d 813, cited by the defense. We agree with this statement of the law, but we feel that there was introduced sufficient circumstantial evidence to make out the offense of rape, especially when combined with the defendants' statements. The decedent was found disrobed except for her slip pulled up exposing her breasts. She was forcibly taken into the church. She was observed on the ground prior to that. She was found in a condition compatible with intercourse and her panties had been removed. There was a spot of blood found on Lewis' shorts, and the shorts that were found in Hodges' apartment had blood on them. The defendants had earlier in the evening accosted and grabbed two other females. A wine bottle had been inserted into the victim's vagina. We hold that under these facts as enumerated the jury could infer, independent of the confessions, that the defendants forcibly took the decedent into the church and raped her. However, the statements of both as to intercourse may also be considered to establish with the other evidence the corpus delicti. See Ashby v. State, 124 Tenn. 684, 697, 698, 139 S.W. 872. The assignment is overruled.

Defendants contend the search was defective, in their motion for new trial. We have examined the search warrant and find that it is based upon facts in the affidavit sufficient to support the magistrate's finding of probable cause. See Owens v. State, 217 Tenn. 544, 552, 554, 399 S.W.2d 507.

We lastly turn our attention to the assignments pertaining to the death sentence, its imposition and the court's instructions defining it as punishment for the offense. The Supreme Court of the United States has decreed that the death sentence is contrary to the Eighth Amendment to the Constitution of the United States, see William Henry Furman v. State of Georgia, Lucious Jackson, Jr. v. State of Georgia, and Elmer Branch v. State of Texas, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346, decided June 29, 1972. In compliance with that decision we have no alternative even as here when we find no error but to remand this record back to the trial court for determination of punishment. See Beaver v. State, Tenn.Cr.App., 475 S.W.2d 557, 561. It is so ordered.

The judgment of the trial court is reversed. The record is remanded for punishment determination.

RUSSELL, and O'BRIEN, JJ., concur.

OPINION ON PETITION TO REHEAR

A petition to rehear has been filed by the state in this cause.

We are urged in the petition to reconsider the remand for trial as to the punishment aspect of our opinion.

We had affirmed the judgment of conviction when the assignments of error were treated and found without merit. However, as stated in our opinion, we had no alternative but to remand the record for a determination of punishment in view of the holdings in Furman v. Georgia, Jackson v. Georgia and Branch v. Texas, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346.

 We are notified by the petition to rehear that by Executive Order of Commutation No. 70030 executed by the Honorable Winfield Dunn, Governor of the State of Tennessee, that the sentence of

death imposed by the jury in this record is commuted to ninety-nine years imprisonment. Such order of commutation as entered has been affixed and attached to the petition reflecting execution by signature of the Governor with affixation of the Great Seal of the State on August 7, 1972.

On December 18, 1972, our Supreme Court, in deciding the validity of a similar commutation by the Governor, see Bowen v. State, Tenn., 488 S.W.2d 373, released at Knoxville on December 18, 1972, decreed the exercise of the power of commutation by the Governor to be valid and a proper exercise of executive authority.

It is therefore ordered, adjudged and decreed that the request by the state in this petition is with merit. See Bowen v. State, supra. We therefore, in obedience to the mandate of our Supreme Court under the authority delineated, reconsider the remand for punishment aspect of our opinion and for naught it is held. The judgment is accordingly modified and affirmed in compliance with the executive order of commutation as entered.

RUSSELL, and O'BRIEN, JJ., concur.