Clarence L. COLLINS, Jr., Petitioner,

v.

STATE of Tennessee, Respondent.

STATE of Tennessee, Petitioner,

v.

Frank Carl MORGAN, Respondent.

Supreme Court of Tennessee.

Jan. 24, 1977.

On Rehearing May 2, 1977.

---

See also, 550 S.W.2d 636.

Eric D. Christiansen, Larry W. Weems, Greeneville, for petitioner Collins; Jack Greenberg, James M. Nabrit, III, David Evan Kendall, Peggy C. Davis, New York City, Anthony G. Amsterdam, Stanford,

Cal., Don Donati (Student), Knoxville, of counsel.

David L. Raybin, Weldon B. White, Jr., Asst. Attys. Gen., Nashville, Stephen M. Bevil, Thomas J. Evans, Asst. Dist. Attys. Gen., Chattanooga, for petitioner State.

David L. Raybin, Weldon B. White, Jr., Asst. Attys. Gen., Nashville, H. H. Winstead, Dist. Atty. Gen., Rogersville, Ben K. Wexler, Asst. Dist. Atty. Gen., Greeneville, Richard C. Jessee, Asst. Dist. Atty. Gen., Morristown, for respondent State; R. A. Ashley, Jr., Atty. Gen., Nashville, of counsel.

H. H. Gearinger, Chattanooga, for respondent Morgan.

Lionel R. Barrett, Jr., Tenn. Assoc. of Crim. Lawyers, Nashville, amicus curiae.

## OPINION

HARBISON, Justice.

Petitioner Clarence L. Collins, Jr., was convicted of murder in the first degree in connection with the death of Merchie Ford Bacon and sentenced to death by electrocution. He was also convicted of murder in the second degree in connection with the death of Sara Gilbert Bacon and sentenced to ninety-nine years in the state penitentiary. Both convictions, including the death penalty, were affirmed by the Court of Criminal Appeals.

Certiorari was granted upon the petition of Collins, primarily in order that this Court might consider the constitutionality of the death penalty under existing state statutes. Other assignments of error were made on behalf of Collins, and we have given consideration to these. All of them were dealt with properly and adequately, however, in the opinion of the Court of Criminal Appeals, and we do not find that any of them have sufficient merit to warrant reversal of the convictions. Accordingly the conviction and sentence of the petitioner Collins in connection with the death of Mrs. Bacon are affirmed, and all of his assignments of error, other than those involving the death penalty in this state, are overruled. His

conviction of murder in the first degree of Mr. Bacon is also affirmed.

Respondent Frank Carl Morgan was convicted of murder in the first degree while in the perpetration of a burglary in Chattanooga, Tennessee on October 13, 1974. His conviction for this offense was affirmed by the Court of Criminal Appeals, but, in a divided decision, that Court held unconstitutional the Tennessee statutes imposing the death penalty. The sentence in that case was, therefore, set aside and the cause remanded for resentencing. We granted the petition of the State on the punishment issue, and the only questions before the Court in the Morgan case concern the death penalty and the proper disposition of the case if that penalty cannot validly be imposed under existing state law.

Following the decision of the United States Supreme Court in the case of *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), the General Assembly of Tennessee, like that of many other states, reconsidered and redrafted the state statutes providing for the death penalty. The first Tennessee statute following *Furman* was Chapter 192 of the Public Acts of 1973. This statute redefined the offense of first degree murder, and provided for a separate sentencing hearing following an adjudication of guilt. It permitted the jury to consider aggravating and mitigating circumstances, and provided for automatic review by the state Supreme Court of cases in which the death penalty was imposed.

In the case of *State v. Hailey*, 505 S.W.2d 712 (Tenn.1974), the 1973 statute was held unconstitutional under the provisions of Article II, Section 17, of the state constitution, upon the ground that its provisions embraced more than one subject, and not all of the subject matter was set forth in the title or caption.

Since the 1973 legislation was invalid, prior state law dealing with the subject of murder in the first degree was left unaffected. *State v. Dixon*, 530 S.W.2d 73 (Tenn.1975). This earlier law had been codified in Williams Tenn.Code Ann. §§ 10768 et seq., T.C.A. §§ 39–2402 et seq.

Subsequently, by Chapter 462 of the Public Acts of 1974, the General Assembly amended the definition of murder in the first degree as contained in T.C.A. § 39–2402, and provided a mandatory death penalty for all persons convicted of that offense or as accessory before the fact of that crime. This mandatory death penalty was the subject of the opinions of the Court of Criminal Appeals in the cases now under consideration.

The 1974 statute makes no provision for a separate sentencing hearing, apart from the trial in which guilt is determined, and makes no provision for consideration of aggravating or mitigating circumstances, other than such as may inhere in the definition of the offense itself. Presumably the General Assembly, by making the death penalty mandatory, sought to eliminate the imposition of that penalty in an arbitrary or capricious manner prohibited by the decision of the United States Supreme Court in *Furman, supra.*

On July 2, 1976 the Supreme Court of the United States rendered opinions in five cases, giving consideration to the death penalty statutes of the states of North Carolina, Florida, Louisiana, Georgia and Texas. See *Gregg v. Georgia*, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976), and the opinions in its four companion cases.

In the cases of *Woodson v. North Carolina*, 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976), and *Roberts v. Louisiana*, 428 U.S. 325, 96 S.Ct. 3001, 49 L.Ed.2d 974 (1976), statutes providing for mandatory sentence of death upon conviction of murder in the first degree were held to violate the Eighth and Fourteenth Amendments to the Constitution of the United States. Statutes giving to the sentencing authority "controlled discretion" in the other three states were sustained.

Subsequently, on July 6, 1976, a mandatory death penalty under the statutes of Oklahoma was also held invalid. *Williams v. Oklahoma*, 428 U.S. 907, 96 S.Ct. 3218, 49 L.Ed.2d 1215 (1976).

■ We have carefully considered the texts of the various opinions of the Supreme Court of the United States, and we are of the opinion that the mandatory death penalty of the 1974 Tennessee statute here under consideration cannot be distinguished in any meaningful or significant way from the North Carolina, Louisiana and Oklahoma statutes invalidated in the cases above referred to. Accordingly, the death sentences in each of the cases under consideration must be set aside, and Section 3, Chapter 462 of the Public Acts of 1974, as codified in T.C.A. §§ 39–2405, 2406, is declared unconstitutional, for the reasons and upon the grounds stated by the United States Supreme Court in *Woodson* and *Roberts*, supra.

■ Setting aside the sentences in these cases, of course, does not have the effect of invalidating the provisions of T.C.A. § 39–2402, defining the offense of murder in the first degree, or of the convictions obtained thereunder. It does have the effect of reviving the law prior to 1973, insofar as punishment is concerned. Statutes in existence prior to the adoption of Chapter 192 of the Public Acts of 1973 and prior to the adoption of Section 3, Chapter 462, of the Public Acts of 1974, provided that persons convicted of murder in the first degree

> ". . . shall suffer death by electrocution, or be imprisoned for life or over twenty (20) years, as the jury may determine." Williams Tenn.Code Ann. § 10771, T.C.A. § 39–2405.

Prior law, originating in Chapter 5 of the Public Acts of 1919, provided that the convicting jury should fix punishment at death, but they might "if they are of opinion that there are mitigating circumstances," fix the punishment at imprisonment for life or for some period over twenty years. T.C.A. § 39–2406.

■ The "mitigating circumstances" in the prior law were not delineated by statute, although some of them were considered in reported cases construing the statute. Nevertheless, we are of the opinion that the pre-1973 statutes, like the 1974 Act, did not prescribe sufficiently detailed procedures to accomplish "controlled discretion" by the

jury in the imposition of the death penalty, as required by the recent decisions of the United States Supreme Court above referred to. The death penalty provisions contained in them are invalid, in our opinion, under the principles announced in those cases and in *Furman v. Georgia, supra.*[1] For this reason, we cannot approve the suggestion made by the State, in its supplemental brief, that the prisoners in these cases and others similarly situated be given resentencing hearings to include the possibility of death sentences under the earlier Tennessee statutes.

▆ In similar cases in the past, this Court has held that the proper procedure to be followed, where the death penalty cannot validly be carried out, is for the cause to be remanded for a new sentencing hearing before a jury. The fact that punishment is fixed by a different jury from that which assessed guilt was held not to violate either constitutional or statutory rights of the accused in *Hunter v. State*, 496 S.W.2d 900 (Tenn.1972). See also *Farris v. State*, 535 S.W.2d 608 (Tenn.1976) and the analysis of the subject on petition to rehear, 535 S.W.2d at 620–621.

Accordingly these cases are remanded to the respective trial courts from which they originated for a resentencing hearing, with punishment to be fixed in each case from twenty years to life imprisonment. Costs in each case are taxed to the defendant.

COOPER, C. J., and FONES and BROCK, JJ., concur.

HENRY, J., dissents in part.

HENRY, Justice, concurring in part; dissenting in part.

I am in full accord with so much of the majority opinion as holds that the Tennessee death penalty statute is unconstitutional. This conclusion is mandated by the recent decision of the Supreme Court of the United States as set forth in the main opinion.

## I.

The only remaining questions are whether these defendants, and others similarly situated must be given (1) a new trial, or (2) a sentencing hearing, with punishment fixed at imprisonment for life or for some period over ten years (Sec. 39–2408, T.C.A.) or (3) whether this Court may properly impose a life sentence or a sentence for a term of years without remanding the case and without the consent of the state or the defendant.

This is a case of first impression in this state in that no reported decision of this Court provides a positive and direct answer. It is true that we have a line of seemingly analogous cases, but, upon analysis, the distinction is unmistakable.

The instant cases are *not* cases wherein the Court has concluded that the convicting evidence is sufficient only to sustain a lesser included offense, as in *Corlew v. State*, 181 Tenn. 220, 180 S.W.2d 900 and in a long line of cases flowing therefrom. Nor are they cases wherein the error committed only affected the sentence and not guilt or innocence as in *Farris v. State*, 535 S.W.2d 608 (Tenn.1976).

In each case the defendant was guilty of the commission of a brutal and heinous murder, with no mitigating circumstances. Each had a fair trial.

There being no direct precedent to guide us in our conclusion, our decision must be the product of a reasoned, rational and realistic approach, within the framework of controlling principles of constitutional and statutory law.

## II.

It is incontestably true that a conviction of first degree murder carries with it a

---

1. In the case of *Hunter v. State*, 496 S.W.2d 900, 904 (Tenn.1972), this Court said that the effect of *Furman* "is to render void the penalty of death as it exists under the statutes of Tennessee."

conviction of all lesser included offenses, ranging all the way down to simple assault.[1] As an inevitable corollary, such a conviction entails punishment ranging from death by electrocution, under the law then in effect, all the way down to a monetary penalty or confinement in the county jail.

The defendant, in such a case, has had his full constitutional right to trial by jury, and, in legal effect, has been found guilty of all offenses and subject to all sentences.

In the case of these defendants each jury had all these options. True, if they found guilt of first degree murder they could only punish by electrocution, but they were not compelled to make such a finding. They could have found either defendant guilty of murder in the second degree and fixed punishment at life or at ten years or more. And, again, such finding and punishment are necessarily included in the finding of murder in the first degree and death by electrocution.

By quirk of fate, these defendants have been convicted under an unconstitutional statute and we must nullify the sentence of death by electrocution; however, this leaves intact the conviction of second degree murder. Since the jury verdict validated any and all lesser sentences, this reduction in degree would carry with it a reduction to the next highest penalty, life imprisonment.

We are commanded by statute (Sec. 40–3409, T.C.A.) in all criminal cases to

*render* such judgment on the record as the *law demands*. (Emphasis supplied).

In my view, the law demands that these convicted murderers be dealt with in a manner commensurate with the gravity of their offenses. Neither the dictates of the law nor the commands of conscience require that we give them a second opportunity to plead their causes to a jury.

Discussing the alternatives available to the Court in the resentencing of death penalty cases, Justice McCanless, writing for the Court in *Bowen v. State*, 488 S.W.2d 373 (Tenn.1972), stated that

it is conceivably within the power of this Court to reduce the death penalty to ninety-nine years, where a defendant is clearly and beyond a reasonable doubt guilty of a first degree murder which justifies the death penalty, which would be applied except for the unconstitutionality of the death part of the sentence. 488 S.W.2d at 377.

While, admittedly, the language quoted from *Bowen, supra,* was dictum in that case, it is uniquely appropriate in the present situation, and, in my view, is a correct statement of the law.

### III.

There is a practical aspect to this matter. A sentencing hearing will require the same precise proof and trial proceedings as the original trial, plus evidence in mitigation and extenuation that was not admissible in a unitary trial where the jury was called upon to find guilt or innocence and fix punishment. Numerous first degree murder cases now pend determination in the appellate courts. To remand all of them for sentencing hearings would be an undue strain upon an already over-burdened criminal justice system, to say nothing of the tremendous cost involved.

Thirty-six (36) persons convicted of first degree murder and sentenced to death by electrocution are now on "death row" in our state penitentiary. An unknown number are in county jails throughout the state. A conservative estimate of the cost per day of a jury trial in our criminal courts would be approximately $1,000.00. The cost to the state of these sentencing hearings will be staggering.

I fully realize that justice may not be rationed and that normally the cost factor is not a relevant consideration; however, in cases such as these where full, fair and constitutional hearings have already decid-

---

1. We are not concerned, in this opinion, with the duty of the trial judge in charging lesser included offenses.

ed all issues, it would be a complete waste of public funds to conduct re-trials.

Justice suffers when justice is delayed. The surest solution to the high incidence of crime in America, in my view, is sure, swift and certain punishment. Nothing degrades our criminal justice system more and creates more disrespect for the courts and its processes than the lingering delay in the disposition of criminal cases. I am unwilling to contribute to that delay.

## IV.

There is yet another solution.

The Governor has the constitutional and statutory power to commute a punishment of death to imprisonment for life in the penitentiary. Sec. 40–3506, T.C.A.; *Bowen v. State*, 488 S.W.2d 373 (Tenn.1972), and his commutation of sentence is a substitution of a lesser for a greater punishment.[2]

Further Section 40–3506, T.C.A. provides:

40–3506. *Commutation on certificate of Supreme Court.*—The governor may, likewise, commute the punishment from death to imprisonment for life, upon the certificate of the Supreme Court, entered on the minutes of the court, that in their opinion, there were extenuating circumstances attending the case, and that the punishment ought to be commuted.

In view of the unique developments surrounding these cases in particular and the death penalty in Tennessee in general, this Court could certify to the Governor the existence of extenuating circumstances. Admittedly this is a liberal—and perhaps a strained—interpretation of the legislative intent, but I feel it justified under the unique circumstances of this case.

Moreover, this statute is not binding upon this Court and in no sense entrenches upon the Court's power, duty or obligation to convey to the Governor its views in appropriate cases. We, therefore, are not limited to the certificate as set forth in the statute, but, independent of the statute, in a proper case, may make our determination that executive commutation is appropriate, and communicate this determination to the Governor.

Therefore, pursuant to, and independent of the statute, by my signature hereon, I do hereby certify to His Excellency, The Honorable Ray Blanton, Governor of the State of Tennessee, that in my opinion, there are extenuating circumstances in these cases, and that the punishments ought to be commuted to life imprisonment. This certification should be deemed and treated as having been made in all cases wherein the same constitutional problems have arisen or may arise.

In making this certification, I am not unmindful of the doctrine of separation of powers. This wholesome doctrine, however, does not preclude cooperation, coordination and communication among the three coordinate branches of the state government on matters of vital public concern.

In summary, I would reduce these sentences to life imprisonment,[3] thereby "render(ing) such judgment as the law demands." In the alternative, I would uphold the convictions, certify to the Governor the existence of extenuating circumstances, wait a reasonable length of time for the Governor's official response, and should he fail to act, would reduce the sentences in the manner and to the extent aforesaid.

**2.** It must be borne in mind that the recent decisions of the Supreme Court of the United States did not *ipso facto* operate to void these sentences. They stand until this Court, applying the principles established by the Supreme Court of the United States, invalidates them. After the commutation these sentences stand on the same footing as if they had been pronounced in the original trial for the commuted term. 488 S.W.2d at 375–76. After commutation the original judgments stand as valid and no change is necessary. This follows from the fact that the commutation does not affect the judgment, but merely mitigates the punishment. Therefore a commutation merely renders so much of the original judgment as adjudges the death penalty a nullity, leaving the remainder intact. 488 S.W.2d at 378. Review in this Court would be limited to guilt or innocence of first degree murder.

**3.** Life imprisonment is the second most severe form of punishment under Tennessee Law.

## OPINION ON PETITION TO REHEAR

HARBISON, Justice.

Seven days after the release of the opinions of this Court in the above cases, the Governor of the State commuted the death sentences of petitioner Collins and respondent Morgan to life imprisonment, and this action was duly called to the attention of the Court by a timely petition for rehearing.

The State contends that the order of commutation substitutes *ab initio* a judgment of life imprisonment in the cases at bar, rendering unnecessary and inappropriate remands for resentencing. It relies primarily upon *Bowen v. State*, 488 S.W.2d 373 (Tenn.1972); *Hodges v. State*, 491 S.W.2d 624 (Tenn.Cr.App.1972); and *Rose v. Hodges*, 423 U.S. 19, 96 S.Ct. 175, 46 L.Ed.2d 162 (1975).

In *Bowen*, the order of commutation was issued following the decision by the United States Supreme Court in *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), and prior to release of the opinion of the Tennessee Supreme Court.

We do not consider the fact that our opinion was released on January 24, 1977, prior to the order of commutation, materially distinguishes these cases from *Bowen*. The State's petition to rehear is properly before us in compliance with Rule 32 and presents as an issue the validity and effect of the executive action in commuting punishment from death to life imprisonment. The purpose of a petition to rehear is to request the Court to modify or set aside its opinion. It is fundamental that no final judgment can be entered on an opinion of the Court until the time expires for the filing of a petition to rehear or until disposition of such a petition which was timely filed. Accordingly no final judgment had been entered on our opinion of January 24, 1977, and we had not finally vacated the death sentence at the time of the Governor's action.

We conclude that the validity of the Governor's commutations of the death sentences imposed upon Collins and Morgan by the verdict and judgment of the respective trial courts is properly before us for decision, in a posture indistinguishable in principle from the issue presented in the *Bowen* case.

■ In *Bowen*, Mr. Justice McCanless, writing for the Court, discussed the following principles and reached the conclusion that the commutation was constitutionally permissible and lawfully imposed: (1) the Governor, in exercising the constitutional power to grant reprieves and pardons, which includes commutation, can no more be controlled by courts than by the legislature; (2) while a pardon is not complete without an acceptance, consent of a defendant is not necessary to sustain the validity of a commutation; (3) a commutation of a sentence is a substitution of a less for a greater punishment, and after commutation, the sentence has the same legal effect as though it had originally been pronounced for the commuted term.

We concur in these conclusions.

■ The commutation was exercised within the constitutional power of the executive, and we cannot refuse to recognize its validity. Life imprisonment is a less severe penalty than death, and an accused has no basis for complaint.

In a criminal case it is the right of the jury to determine the law and the facts.[1] In these cases each jury was instructed as to first degree murder, second degree murder, and all lesser included offenses. The two juries had the opportunity and authority to impose a lesser sentence but declined to do so. Since the defendants received the maximum penalty of death at the hands of juries, there is nothing in our statutory or constitutional law or the decisions of this Court requiring that they be given a second jury trial as to punishment under the circumstances presented here.

1. Tennessee Constitution, Article I, § 19; *Scott v. State*, 207 Tenn. 151, 338 S.W.2d 581 (1960); *Dykes v. State*, 201 Tenn. 65, 296 S.W.2d 861 (1956).

Other questions are raised in the petition for rehearing which were not involved in these cases and which would, in our opinion, be inappropriate for us to consider at this time.

The result is that the judgments of the respective trial courts are affirmed, as commuted to life imprisonment.

FONES, J., concurs.

HENRY, J., files concurring opinion.

COOPER, C. J., dissents.

BROCK, J., files dissenting opinion.

HENRY, Justice, concurring.

I concur in the opinion prepared for the Court by Mr. Justice Harbison. I particularly applaud the following language:

In these cases each jury was instructed as to first degree murder, second degree murder, and all lesser included offenses. The two juries had the opportunity and authority to impose a lesser sentence but declined to do so. Since the defendants received the maximum penalty of death at the hands of juries, there is nothing in our statutory or constitutional law or the decisions of this Court requiring that they be given a second jury trial as to punishment under the circumstances presented here.

This is precisely what I pointed out in my dissent from the first opinion of the Court in this case.

Specifically, I reasoned:

It is incontestably true that a conviction of first degree murder carries with it a conviction of all lesser included offenses, ranging all the way down to simple assault. As an inevitable corollary, such a conviction entails punishment ranging from death by electrocution, under the law then in effect, all the way down to a monetary penalty or confinement in the county jail.

The defendant, in such a case, has had his full constitutional right to trial by jury, and, in legal effect, has been found guilty of all offenses and subject to all sentences.

In the case of these defendants each jury had all these options. True, if they found guilt of first degree murder they could only punish by electrocution, but they were not compelled to make such a finding. They could have found either defendant guilty of murder in the second degree and fixed punishment at life or at ten years or more. And, again, such finding and punishment are necessarily included in the finding of murder in the first degree and death by electrocution.

At the time I prepared my Separate Opinion, I could find no precedent, and, finding none had no choice but to proceed upon the basis of what I considered to be irrefutable logic. Fortunately, with the passage of time has come precedent from other jurisdictions.

Some three weeks after the main opinion and the dissent were filed in the instant case the Supreme Court of Nevada released its opinion in *Smith v. State,* 93 Nev. Advance Opinion 35, 560 P.2d 158 (Feb. 17, 1977). The Nevada mandatory death penalty is incorporated in NRS 200.030, which defines "capital murder" and provides that it "shall be punished by death." In *Smith* the Nevada Court, pursuant to the mandate of *Woodson v. North Carolina,* 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976) and *Roberts v. Louisiana,* 428 U.S. 325, 96 S.Ct. 3001, 49 L.Ed.2d 974 (1976), declared the Nevada death penalty to be unconstitutional, and imposed "life imprisonment without possibility of parole."

The Nevada Court, in *Anderson v. State,* 528 P.2d 1023 (Nev.1974), instructs us that after the decision in *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), "life imprisonment without the possibility of parole became the maximum sentence that could be imposed in Nevada against a person convicted of first degree murder." Therefore, the Court held:

The district judge was authorized to resentence the appellant and invoke the penalty of life without possibility of parole, *it being the only lawful penalty which could have been entered upon the*

*conviction and finding of the jury that Anderson should receive the maximum sentence permitted by law.* (Emphasis supplied). 528 P.2d at 1025.

An even more significant case is *Boyd v. Commonwealth of Kentucky*, 550 S.W.2d 507 (opinion filed March 11, 1977), wherein the Kentucky Supreme Court held that state's mandatory death penalty to be unconstitutional,[1] and reduced the punishment to life imprisonment. Pertinent to the case at bar is the following:

> The jury found Boyd guilty of the intentional multiple murders of Gilliam and Howard. In order for the jury to reach this result it was necessary that it find Boyd guilty of the intentional murders of both Gilliam and Howard under aggravated conditions and reject all possibilities of intentional simple murder or manslaughter convictions.
>
> The jury chose to convict Boyd of the most serious and aggravated offense and invoke the ultimate punishment of death. It deliberately rejected the opportunity to extend mercy by declining to convict Boyd of simple intentional murder or manslaughter in the first degree. It was clearly the intention of the jury to impose the maximum punishment legally permissible. The maximum punishment constitutionally permissible under Kentucky's 1974 penal code is life imprisonment. Unless the verdict of the jury is to be completely frustrated, it is this punishment which must be imposed upon Boyd for each of the two murders of which he stands convicted.

Thus, the Kentucky Court, under statutory provisions having precisely the same effect as Sec. 39–2405, 2406, T.C.A., followed the identical procedure heretofore suggested in my dissent and now adopted by the majority opinion.

It would be unthinkable for this Court to hold that the Governor of Tennessee does not have the power to issue a commutation in these cases. I, therefore, agree with the majority opinion that he acted "within the constitutional power of the executive, and we cannot refuse to recognize its validity." However, it is not necessary that we reach this issue. All that is necessary is that we recede from the views expressed in the original opinion and reduce these sentences to life imprisonment.

BROCK, Justice, dissenting.

I dissent. On January 24, 1977, this Court announced its opinion and judgment in these cases, declaring unconstitutional Section 3 of Chapter 462 of the Public Acts of 1974, which mandated punishment by death for the crime of murder in the first degree, vacating the death sentences of defendants Collins and Morgan and remanding their cases to the trial courts for new trials limited to the ascertainment of proper punishment by a jury and the imposition of new sentences by the trial judge, such sentences to be from 20 years to life imprisonment, as provided by the appropriate statutes.

Thereafter, the State filed a petition to rehear asserting that after this Court had vacated the death sentences in these causes, the Governor "commuted" the sentences from death by electrocution to imprisonment for life. Now, in response to the petition to rehear, the majority of the Court is reversing our original determination that defendants Collins and Morgan were entitled to have their punishment assessed by a jury and new sentences imposed by the trial courts and, instead, is affirming the respective judgments of the trial courts "as commuted to life imprisonment." In my opinion, this reversal deprives the defendants of valuable rights to have their punishment determined by the courts.

I

I deem it appropriate and advisable to spell out the reasons underlying our original determination that this Court did not have

---

1. Sec. 507.020, KRS defines murder and makes it a capital offense in cases involving multiple murders (as was the case in *Boyd*). Sec. 532.-030 KRS provides for a mandatory death penalty.

lawful authority following the vacation of the death sentences imposed upon the defendants to determine appropriate punishment for the defendants, but, instead, was required by the law of this State to remand their cases to the trial court for a determination of appropriate punishment and new sentences by the jury and trial judge.

There is precedent in Tennessee for adjustment of a sentence at the appellate level under certain limited circumstances. In *Corlew v. State,* 181 Tenn. 220, 180 S.W.2d 900 (1944), a conviction for *grand* larceny was set aside for failure of the State to prove the value of the property taken. It was, nevertheless, clear from the verdict that the jury believed the State's proof of the elements of petit larceny. Rather than ordering a new trial, the Court imposed the minimum sentence for *petit* larceny and gave the State the option of accepting the reduced sentence or retrying the defendant to seek a higher penalty. See also *Forsha v. State,* 183 Tenn. 604, 194 S.W.2d 463 (1946).

The case of *Beaver v. State,* 475 S.W.2d 557 (Tenn.Cr.App.1971) posed a different, but related, problem. Veniremen who expressed conscientious objections to capital punishment were excluded from the jury in violation of the rule of *Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). The Court of Criminal Appeals held that the error did not vitiate the verdict of guilt but affected only the validity of the death sentence imposed. Accordingly, the sentence was reduced to the *minimum* punishment of confinement in the penitentiary for twenty years and one day, subject to acceptance by the State.

There is, however, no Tennessee authority for reducing a sentence to the *maximum* penalty authorized by statute. To the contrary, the rule, without exception, has been that if the punishment fixed by the verdict is either *below the minimum or above the maximum* penalty prescribed by statute, there is no remedy but to reverse and remand for a new trial, *McDougal v. State,* 64 Tenn. 660 (1875); *Cowan v. State,* 117 Tenn. 247, 96 S.W. 973 (1906); *Jamison v. State,*

220 Tenn. 280, 416 S.W.2d 768 (1967); *Corlew v. State, supra* ; on the issue of guilt as well as punishment, *Gohlston v. State,* 143 Tenn. 126, 223 S.W. 839 (1920). This is true even in misdemeanor cases, if the defendant has demanded that the jury fix the punishment. *Van Pelt v. State,* 193 Tenn. 436, 246 S.W.2d 87 (1952); *Aldridge v. State,* 4 Tenn. Cr.App. 254, 470 S.W.2d 42 (1971).

Since the death penalty statutes of 1973 and 1974 have been held invalid, § 10772 of the Code of 1932, without its capital sentencing provision, is "revived." *State v. Dixon,* 530 S.W.2d 73 (Tenn.1975). Therefore, murder in the first degree may be punished by any term in the penitentiary greater than twenty years. In *Hunter v. State,* 496 S.W.2d 900 (Tenn.1972), this Court held that *precisely because a variety of punishments is available,* this Court may not itself correct the sentence but must remand for sentencing by a jury. Although the defendant does not have a *constitutional* right to have the jury determine punishment, he does have a *statutory* right to that effect. *Gohlston v. State, supra.* So does the State. T.C.A. § 39–2406; *Corlew v. State, supra; State v. Odom,* 200 Tenn. 231, 292 S.W.2d 23 (1956); T.C.A. § 40–2707; *West v. State,* 140 Tenn. 358, 204 S.W. 994 (1918), dealing with former law. In *Gohlston,* the Court said that the "Act clearly vests the power to fix the punishment in such cases in the jury" which has the "exclusive power and authority to fix the punishment of the defendants in cases where they have been convicted of murder in the first degree, and [jury sentencing] is mandatory". 143 Tenn. at 132, 223 S.W. at 840.

In the *Corlew* case, *supra,* the Court relied on the obvious proposition that the defendant cannot complain that he is deprived of any rights when he has been found guilty by a jury and receives the least severe sentence a jury could have imposed, observing cautiously that "the rule should never be applied unless it is plain, beyond question, that the action taken is for the benefit of the defendant . . . ." 180 S.W.2d at 902. In the cases at bar, it is sheer speculation to conclude that the jury

which imposed the death penalty would have chosen life imprisonment had the death penalty been unavailable at the time of trial.

It appears to me that the premise of such a speculation is not correct. The law by which these cases were tried and the jurors instructed did not give the jurors any power to withhold the death penalty except by violating their oaths and refusing to return a verdict of first degree murder even though they believed the State's proof. It is for that reason that it is unconstitutional under the decision of the U.S. Supreme Court in *Woodson v. North Carolina,* 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976).

It is true that some other courts of last resort, having found their particular death penalty statutes to be unconstitutional, have imposed sentences of life imprisonment at the appellate level. *Swain v. State,* 290 Ala. 123, 274 So.2d 305 (1973); *Anderson v. State,* 528 P.2d 1023 (Nev. 1974). But, they were administering statutes quite different from ours. That would appear to be a proper action if life imprisonment were the only alternative to capital punishment, as is true in Nevada, where the *Anderson* case arose. N.R.S. 200.030.

The *Swain* case was decided under a statute similar to the "revived" Tennessee statute. The Alabama court could not remand for a new trial on the issue of punishment because there was no statutory authority for bifurcated trials, and it was feared that the administrative problems for the trial court would prove unmanageable. This has not been regarded as a problem in Tennessee. See *Huffman v. State,* 200 Tenn. 487, 292 S.W.2d 738 (1956); *Hunter v. State,* 496 S.W.2d 900 (Tenn.1972). But the crucial distinction between the cases at bar and *Swain* is that there the jury had a choice and selected the penalty of death, whereas, in these cases the jury had no option. Since it elected the harshest punishment available, the court in *Swain* felt warranted in

selecting the next most severe valid penalty after the death penalty was declared unconstitutional. In the cases at bar, the jury simply found the defendant guilty of first degree murder upon the evidence; the punishment followed *automatically.*

*Bowen v. State,* 488 S.W.2d 373 (Tenn. 1972) is relied upon for its *dictum* suggesting that this Court has power to follow the Alabama precedent. But, *Bowen* is bad *dictum* because the same consideration that distinguishes *Swain* distinguishes *Bowen,* namely, that the jury selected the punishment as it was required to do under the law in effect prior to 1973.

Considering the foregoing authorities, I was convinced when we pronounced our original decision that these cases must be remanded for resentencing hearings so that the jury and trial judge may fix a lawful punishment "at imprisonment in the penitentiary for life, or for some period over twenty years." T.C.A., § 39-2406. I adhere to that conclusion.

II

The reason given by the majority for granting the petition to rehear and reversing the original judgment of this Court is that the Governor has since intervened and "commuted" the punishment of the defendants from death by electrocution to life imprisonment. The majority considers these "commutations" to be valid exercises of the executive power and, thus, effective to fix the punishment of the defendants at life imprisonment. I cannot agree. In my view, the Governor's actions were premature and unauthorized by law, and constitute an unwarranted interference with the judicial process.

The power of the Governor is granted by Art. III, Sec. 6, Constitution of Tennessee,[1] as follows:

"He shall have power to grant reprieves and pardons, after conviction, except in cases of impeachment."

1. T.C.A., §§ 40-3501—40-3508, which purport to provide for commutation in certain instances not applicable to these cases.

No power to grant commutations of sentences is expressly mentioned, but it has long been recognized that such power is to be implied from the grant of the greater power to pardon. See 67 C.J.S. Pardons § 15(2), p. 584.

A pardon is an executive act of grace which exempts a person from the punishment the law inflicts for a crime he has committed; a commutation of sentence is the reduction of a lawful punishment to which a person has been condemned to a less severe lawful punishment. *People v. Frost,* 133 App.Div. 179, 117 N.Y.S. 524 (1909).

The difficulty with the "commutations" in these cases, in my view, is that they were prematurely issued and are given an effect not intended by the drafters of our Constitution. It is my firm opinion that no executive act of clemency, whether it be a pardon, reprieve or commutation, can be given the effect of depriving the defendant of a vested legal right; in these cases, the right to have a jury and trial judge determine the term of imprisonment which, possibly, could be as short as twenty years. Nevertheless, such is the effect of these "commutations" as approved by the majority. On January 27, 1977, the defendants had the right to go before a jury and argue that their punishment be fixed at no more than twenty years imprisonment; on January 28, 1977, they were deprived of that right by the Governor and by him sentenced to imprisonment for life. In my view, such a result is not authorized by Art. III, Sec. 6, Constitution of Tennessee, or by any other law. Moreover, such action is, in my view, in plain violation of Art. I, Sec. 8, Constitution of Tennessee, which mandates that:

"No man shall be taken or imprisoned . . . but by the judgment of his peers or the law of the land."

This provision of our fundamental law guarantees that both guilt and punishment must be determined by the courts, not the Governor. The Governor has no power to impose sentence; he has power only to *diminish* the punishment provided by a sentence imposed by the courts.

The power to commute a sentence can never properly be exercised until after the judgment of the courts has become final; until that time there is no sentence to be commuted. Any "commutation" before that time necessarily is an impermissible interference with the judicial process.

A pardon may be granted at any time after conviction and, even when granted before the judgment of the courts is final, does not unlawfully interfere with the judicial process. This is so because the pardon lawfully obliterates both guilt and punishment, without depriving the defendant of any vested right, but a commutation is different.

The majority cites as authority for its action *Rose v. Hodges,* 423 U.S. 19, 96 S.Ct. 175, 46 L.Ed.2d 162 (1975); *Bowen v. State, supra*; and *Hodges v. State,* 491 S.W.2d 624 (Tenn.Cr.App.1972). In my opinion, *Rose* is not in point, but I agree that *Bowen* and *Hodges* are apposite; so are *Whan v. State,* 485 S.W.2d 275 (Tex.Cr.App.1972) and *Stanley v. State,* 490 S.W.2d 828 (Tex.Cr.App. 1972). See also *State v. Hill,* 279 N.C. 371, 183 S.E.2d 97 (1971).

Although apposite, I cannot follow the decisions in *Bowen, Whan* and *Stanley* because they sanction what I consider to be a perversion of the power to commute a sentence. What kind of "commutation" is it that fixes the punishment at *the maximum permitted by law,* that is fervently advocated by the prosecution and just as vigorously opposed by the defendant, that interferes with the judicial process before it is finished and deprives a defendant of his legal right to go before a jury and seek a sentence less than that fixed in the "commutation"? Surely, the power to "grant reprieves and pardons, after conviction, . . . ." does not contemplate such "clemency." I cannot follow precedent which would lead me to deprive a defendant of his statutory and constitutional rights.

It is true that the situation in *Hodges v. State, supra,* was virtually identical to that in the cases at bar insofar as the question of "commutation" is concerned. Subsequent to the Supreme Court's decision in *Furman*

*v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), the Court of Criminal Appeals held that the death penalty statute was unconstitutional and remanded the case to the trial court for determination of a lawful punishment. Upon a petition to rehear, the court took notice of the Governor's subsequent "commutation" of the prisoner's sentence from death to 99 years' imprisonment. Noting that this Court had upheld the validity of a "similar" commutation in *Bowen v. State, supra,* and had "decreed the exercise of the power of commutation by the Governor to be valid and a proper exercise of executive authority", 491 S.W.2d at 629, the Court of Criminal Appeals modified its original judgment "in compliance with the executive order of commutation as entered."

Subsequent to the Court of Criminal Appeals' decision in *Hodges,* the prisoners affected by the court's decision petitioned for habeas corpus in a federal district court asserting that their federal constitutional rights were violated by the Governor's commutation of their death sentences to 99 years' imprisonment. After dismissal by the district court, the Court of Appeals for the Sixth Circuit held that since the death sentences were vacated at the time of the Governor's commutation order, "There were . . . no viable death sentences to commute" and, thus, that the rights of the prisoners under the U.S. Constitution were violated by the "commutations." *Rose v. Hodges, supra,* 96 S.Ct. at 176. The Supreme Court held only that the Governor's commutation whether or not valid under state law, did not violate the U. S. Constitution:

> "Whether or not the sentence imposed upon respondents was subject to commutation by the governor, and the extent of his authority under the circumstances of this case, are questions of Tennessee law which were resolved in favor of sustaining the action of the governor by the Tennessee Court of Criminal Appeals in *Hodges v. State, supra.* It was not the province of a federal habeas court to reexamine these questions. * * * If Tennessee chooses to allow the governor

to reduce a death penalty to a term of years without resort to further judicial proceedings, the United States Constitution affords no impediment to that choice." *Rose v. Hodges, supra,* 96 S.Ct. at 177.

The limited holding of the majority in *Rose* was substantially weakened by the dissenting opinion of Justice Brennan (with whom Justice Marshall joined) who stated:

> "I find troublesome the question whether (since there existed no viable death sentences to commute) the Governor's action should be treated as imposing the 99-year sentences without affording respondents constitutionally secured safeguards required when sentences are imposed. If the Governor had not acted, resentencing would have been by a jury at a proceeding highlighted by the usual safeguards, none of which applied to the Governor's actions. The question is plainly not insubstantial; in *Mempa v. Rhay,* 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967), we held that constitutional safeguards (there the right to counsel) applied to the sentencing stage. Was the commutation in this case actually the sentencing stage since no death sentence existed to commute when the Governor acted? Also, the due process dimensions of the right to present evidence relevant to sentencing was left open in *McGautha v. California,* 402 U.S. 183, 218–20, 91 S.Ct. 1454, 1473, 28 L.Ed.2d 711 (1971). If respondents were "sentenced" by the Governor, were they denied due process when not afforded that opportunity, even assuming that the Federal Constitution permits States to adopt executive in preference to judicial sentencing? I agree that the Constitution allows Tennessee to empower the Governor to reduce a death penalty to a term of years without resort to judicial proceedings. But the Court's disposition assumes, without any in-depth analysis, that the instant case involves such "commutations" despite the fact that respondents' death sentences were voided and were therefore non-existent when the Governor acted." 96 S.Ct. at 179.

I note that on this issue my views are shared not only by the eminent judges of the U.S. Court of Appeals of the Sixth Circuit, but also by Presiding Justice Onion of the Texas Court of Criminal Appeals, who filed scholarly dissenting opinions in *Whan* and *Stanley,* and by Justice Lake of the Supreme Court of North Carolina, who dissented in *State v. Hill, supra.* See also *Mears v. Nevada,* 367 F.Supp. 84, 85 (D.C. 1973). ("Commutation is not . . . a tool for resentencing prisoners whose sentences have been vacated.") In *Stanley,* Presiding Justice Onion, in dissent, said:

> "While the cases here involved were pending before this court, the Governor acted to commute the death sentences no longer in existence to life sentences in each case. * * * In the instant cases there were no acts of clemency involved in the 'commutation' since there was no substitution of a lesser penalty for a greater valid punishment. The 'commutation' merely imposed the highest possible penalty to which the appellants are now subject. The cases which hold that commutation may be accomplished without consent involved a higher valid penalty and further the cases do not consider the requirements of due process." 490 S.W.2d at 831, 833.

The "commutations" in these cases did not save the defendants from the electric chair, the defendants had already been spared that fate by the judgment of this Court. Therefore, the apparent intent, and certainly the real effect, of these "commutations" was to insure that the defendants would not have their punishment fixed by a jury, possibly at twenty years imprisonment, but would receive the maximum punishment allowed by law. I agree that the defendants are deserving of that punishment, but neither this Court nor the Governor has the authority to impose that punishment; under our Constitution and laws, only the jury and trial judge are authorized to do so.

Therefore, I would overrule the petition to rehear and adhere to our original judgment. I am authorized to state that Chief Justice COOPER joins in this dissenting opinion.

COOPER, C. J., concurs in this opinion.