**Guy SMITH, Appellant,**

v.

**STATE of Tennessee, Appellee.**

Court of Criminal Appeals of Tennessee.

May 16, 1977.

Certiorari Denied by Supreme Court
Aug. 1, 1977.

James V. Barr, III, Nashville, for appellant.

R. A. Ashley, Jr., Atty. Gen., David L. Raybin, Asst. Atty. Gen., Nashville, W. B. Lockert, Jr., Dist. Atty. Gen., D. Vance Martin and Robert L. Perry, Jr., Asst. Dist. Attys. Gen., Ashland, for appellee.

## OPINION

DWYER, Judge.

This appeal in the nature of a writ of error is from the judgment of the Circuit Court of Cheatham County sentencing the appellant, Guy Smith, to death by electrocution for committing the offense of murder in the first degree.

In order to properly evaluate the assignments of error and in particular the assignments relating to the sufficiency of the evidence, we will summarize that evidence as found from our review of the record.

A young, eighteen-year-old soldier was found dead in a ditch alongside Bandy Road in Cheatham County on the morning of January 8, 1975. The primary cause of death was a .45 caliber gunshot wound in the neck with entry of the projectile from an up-down position traversing the chest area severing the Aorta. There were multiple stab wounds also on the young soldier's body with at least one of such severity as to also have caused death.

The brother of the appellant, Lyle Anthony Smith, testifying as a State's witness, gave testimony that he saw his brother stab and shoot the young soldier. Anthony had stopped their car which he was driving and his brother pulled the soldier from the back seat, stabbed and shot him. This witness further related that the appellant told him that he killed the soldier because the soldier had seen him kill another person on the Interstate Highway.

The brother's testimony was fully corroborated by other witnesses for the State who gave them a battery boost when their car

stalled in the vicinity on the night of the slaying, who found the identification papers of the deceased which appellant threw from the car, who recovered the .45 caliber pistol from an in-law to whom appellant had returned it, and who matched the shell casing found on the road and the bullet from the body of the deceased with those fired from this weapon during a ballistics test.

The appellant's brother-in-law testified that during a conversation on January 11, 1975, the appellant said that he and the deceased had been drinking together, had gotten into an argument and the deceased had attacked him with a bayonet which appellant managed to take away and then stab the deceased. The appellant did not mention shooting the deceased.

The appellant, upon surrendering to the authorities the next day, stated that he had killed the young soldier in self-defense.

■ Premeditation is an essential element of first degree murder and may be inferred by the jury from the facts and circumstances. We will quote the bill of exceptions from the brother's testimony to determine if that element is present in this record.

"A He stabbed him several times it looked like in the back and he spun around and he stabbed him in the front maybe in the chest and midsection.

"Q All right, now, what was this boy doing at the time he was being stabbed?

"A He was incoherent and from where I was at didn't understand what was happening, he was saying Hey, and you could hear him grunting everytime he was stabbed, I don't know how many times he stabbed him, and—

"Q And what happened then, just go ahead and tell what happened then.

"A And he spun around and stabbed him in the front and told him to lay down and he stabbed him in the back and he—

"Q Had you moved to any other portion of the car by this time?

"A Yes.

"Q Where did you move to?

"A I had moved about the middle of the trunk.

"Q Could you see on the side where the boy was at this time?

"A Yes I could.

"Q What happened next?

"A He was sitting up with his right arm behind him propping him up and all I could see from the position where I was was a stream of blood coming out and I saw Buddy reach for his gun and he shot him and from where I was it looked like he shot him in the mouth. And when he did he just flopped over.

"Q Are you saying that this boy was outside the car and as I understand he was down in a seated position with his right hand behind him.

"A Yes sir.

"Q And your brother, was he still standing up?

"A Yes sir.

"Q And you say that he shot him. What did he shoot him with?

"A With the 45.

"Q With a 45. And you thought he shot him in the mouth.

"A Right.

"Q Did he shoot him from a up down position.

"A Yes sir.

"Q And what did the boy do then?

"A He just fell over."

■ We think from that narration which has been approved by the jury's verdict the element of premeditation may be found in this record. That verdict has rejected the appellant's version of self-defense. Under the rule governing appellate review, as outlined in *McBee v. State*, 213 Tenn. 15, 19, 372 S.W.2d 173 (1963), the burden is upon appellant to show the evidence preponderates against his guilt and in favor of his innocence. This he has not done. The evidence supports the verdict. The assignments relating thereto are accordingly overruled.

He next assigns that the court erred in denying his motion to sequester the jurors during the voir dire so that each juror could be voir dired out of the presence of the

others. The appellant contends that with the whole venire present and the same questions being propounded and the same responses created a carnival-type atmosphere with resulting community thought. An able and conscientious trial judge had this to say in overruling appellant's motion:

"My problem is this, that the facilities are scant, we don't have any place to send the other jurors except out in the courthouse with no place to sit and no place to stay, we just don't have those kind of facilities here to do that, and I can't see at this point that it would be . . . if I had some place to send them that would be fine but as it is they would just be milling around down there in the hallway . . . .. At this point there is nothing either in the decisions or statutes involved requiring this, I understand that maybe there is some effort on the part of the criminal law [revision] committee to bring this about . . . but how long do you think it will take us to do this?"

█ While we are mindful that the proposed Tennessee Rules of Criminal Procedure contemplate the adoption of the principles in his motion on the voir dire, in an excellent opinion by our Presiding Judge Mark A. Walker in *State v. Jefferson*, Tenn., 529 S.W.2d 674, 682 (1975), the voir dire rests within the sound discretion of the trial court. From our review of the voir dire, the questions propounded by the trial court and the questions of the State's attorney and the responses of the jury, we find no abuse of that discretion. There was no error in denying the motion in light of the above. The assignment is overruled.

The appellant contends the "rule" was violated by the T.B.I. agent briefing incoming witnesses of the State before they testified. In *Nelson v. State*, 32 Tenn. 237, 257 (1852), the following language may be found:

". . . The practice of examining the witnesses separate and apart from each other, at the request of either party, is invaluable, in many cases, for the ascertainment of truth and the detection of falsehood. Such has been the experience of wise men in all ages, from the days of Daniel, that divinely-inspired judge, down to the present time."

The trial court on overruling his motion for a mistrial stated:

"THE COURT: Do you mean to say that he told them what the other witnesses had testified to?

"MR. BARR: No sir, he went over their testimony briefing them before they came in here."

█ The spirit of the "rule", obviously is to prevent one witness from hearing the testimony of any other witness and adjusting his testimony in accord thereto. All of these matters address themselves to the sound discretion of the court. With no comparison or disclosure of previous testimony from the agent to the prospective witnesses and rather only a review of that witness's own testimony, we find no error in denying his motion for mistrial. This assignment is overruled.

█ The Supreme Court of our State in *Collins v. State (State v. Morgan)*, Tenn., 550 S.W.2d 643 (1977), held that the imposition of death under the mandatory provisions of Section 39–2406, Chapter 462 of the Public Acts of 1974 and codified into our code as T.C.A. 39–2405 violated the Eighth and Fourteenth Amendments to the Constitution of the United States and was therefore unconstitutional under the tenets of *Woodson v. North Carolina*, 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976) and *Roberts v. Louisiana*, 428 U.S. 325, 96 S.Ct. 3001, 49 L.Ed.2d 974 (1976). Our Supreme Court in an opinion on a petition to rehear by the respondent State styled *Collins* (and *Morgan*) *v. State*, 550 S.W.2d 643 (1977), at Knoxville, held that the governor had the authority to commute the punishment of death to one of life imprisonment. The governor by proclamation number EC 2 appended to this opinion commuted the punishment of appellant here from death to life imprisonment. Under that authority the sentence of death here is commuted to life imprisonment.

The judgment of the trial court as modified is affirmed.

WALKER, P. J., and TATUM, J., concur.
Illustrations follow.

652

**State of Tennessee**

**Department of State**

To all to whom these Presents shall come, Greeting:

I Gentry Crowell . Secretary of State of the State of Tennessee, do hereby certify that the annexed is a true copy of

COMMUTATION OF SENTENCE OF GUY R. SMITH

the original of which is now on file, and a matter of record in this office.

In Testimony Whereof, I have hereunto subscribed my Official Signature and by order of the Governor affixed the Great Seal of the State of Tennessee at the Department in the City of Nashville, this 9th day of February A.D. 19 77

Gentry Crowell

Secretary of State

EC 2

# COMMUTATION

*TO WHOM THESE PRESENTS SHALL COME, MORE ESPECIALLY THE WARDEN OF THE PENITENTIARY, GREETINGS:*

*WHEREAS, at the* .................................................... February ................. *term, 19* 76 *, of the* ................ Criminal ........................... *Court for our County of* ........ Cheatham ........................ ......... Guy R. Smith #77772 ........................ ......... *was convicted of* ........ Murder First Degree ... ................................................ *and sentenced to undergo confinement for the term of* ......... Death .......................................................................................................

*AND WHEREAS, it appears to be a proper case of commutation by the exercise of executive clemency, for the following reasons:*

In the case of Woodson vs. North Carolina, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976), and companion cases, the Supreme Court of the United States ruled death penalty statutes similar to that of Tennessee's unconstitutional. On January 24, 1977, the Supreme Court of Tennessee in the cases of Collins vs. State of Tennessee and State of Tennessee vs. Morgan declared Tennessee death penalty statute unconstitutional on the basis of the Woodson decision. Therefore, this case appears to be a proper case for commutation of the sentence by the exercise of executive-clemency.

*This commutation is granted conditioned that the aforesaid prisoner obey all the rules and regulations of the authority having custody of him, lead the life of a good citizen, obey all the laws of the Nation, States, and Municipalities and shall not be guilty of other conduct, in the opinion of the Governor, improper and illegal. In the event any of the foregoing conditions are violated, the Governor, at his option (or on the recommendation of the State Board of Pardons, Paroles and Probation) may issue a warrant for the arrest and return of said prisoner to the Warden of the State Penitentiary to undergo remainder of said original or commuted sentence, as determined by the Governor. The Governor shall be sole judge as to whether or not any of the aforesaid conditions have been violated, and there shall be no review of his action thereon by any Court whatsoever.*

*NOW, THEREFORE, I,*     Ray Blanton     . *Governor, by virtue of the power and authority in me vested, do hereby commute the said* ..... Guy R. Smith #77772 ...........................

*from the offense of* ............... Murder First Degree ................... *to* ........ Same .........................

*and the sentence from* ........................................ Death ................... *to* ........ Life Imprisonment ........

*but in no other way interfering with the judgment and sentence of said Court; and I further authorize and direct that the authority having the said* .. Guy R. Smith #77772 ...........................

*in custody, will act accordingly.*

*IN TESTIMONY WHEREOF, I have hereunto set my hand and caused the Great Seal of the State to be affixed at Nashville, Tennessee, on the* 84h .....day of Ilbruary 19 77 .

*By the Governor:*

Secretary of State.

Ray Blanton
Governor.