IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs November 29, 2005

## STATE OF TENNESSEE v. WILLIAM G. ARTERBURN

**Appeal from the Criminal Court for Hamblen County**
**No. 04CR192     James E. Beckner, Judge**

---

**No. E2005-00596-CCA-R3-CD - Filed January 30, 2006**

---

A Hamblen County Criminal Court jury convicted the defendant, William G. Arterburn, of driving under the influence, second offense ("DUI"), a Class A misdemeanor, and driving on a revoked license, a Class B misdemeanor, and the trial court sentenced him to eleven months and twenty-nine days for the DUI and six months for the driving on a revoked license, ordering the defendant to serve fifty percent of his sentence in incarceration. The defendant appeals, claiming that the evidence is insufficient and that a rebuttal witness violated Rule 615 of the Tennessee Rules of Evidence, thereby denying him a fair trial. We affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

JOSEPH M. TIPTON, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and THOMAS T. WOODALL, J., joined.

Paul G. Whetstone, Mosheim, Tennessee, for the appellant, William G. Arterburn.

Paul G. Summers, Attorney General and Reporter; Blind Akrawi, Assistant Attorney General; C. Berkeley Bell, Jr., District Attorney General; and Victor J. Vaughn, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

This case relates to the defendant's involvement in an accident on March 7, 2004. At the trial, Hamblen County Sheriff's Department Deputy Garrett Morton testified that he was dispatched to the scene of an accident on Three Springs Road where he saw a paramedic working to extract a person trapped in a pickup truck. He said the truck was lying on its side on the pavement with the driver's side on the ground. He said the defendant and Gary Wilder were trapped in the pickup. He said that the defendant was behind the steering wheel and that Mr. Wilder was on top of the defendant. He said emergency personnel were able to remove the defendant and Mr. Wilder from the truck and transport them to the hospital. He said his investigation revealed "open beer cans in the truck as well as the casing to a twelve-pack."

Deputy Morton said that he went to the hospital and spoke with the defendant and that believing the defendant drove the truck, he asked the defendant to submit to a blood alcohol level test. He said the defendant refused. On cross-examination, Deputy Morton acknowledged that he did not personally witness the defendant driving. He admitted that only Gary Wilder and the defendant knew for sure who was driving. Deputy Morton acknowledged that based upon his experience, he had seen people thrown around inside a wrecked car.

Jay Jarnigan testified that he worked as a paramedic for the Hamblen County E.M.S. He said he was called to the scene of the accident involving the defendant. He said that when he arrived, he saw the defendant pinned behind the wheel with his feet tangled in the pedals. He said Mr. Wilder was lying on top of the defendant. He said he and other emergency personnel were able to remove the defendant and Mr. Wilder from the pick-up truck. He said that the defendant smelled of alcohol and that he asked the defendant if he had been drinking. He said the defendant replied that he had had twelve beers. On cross-examination, Mr. Jarnigan acknowledged that neither man was wearing a seatbelt. Mr. Jarnigan said he was not sure whether Mr. Wilder had been drinking because he was not attending to Mr. Wilder.

Carla Griffin testified that she worked as an emergency medical technician for Morristown E.M.S. She said she responded to the accident involving the defendant and assisted Jay Jarnigan. She said the defendant smelled of alcohol. On cross-examination, Ms. Griffin admitted that she did not have the opportunity to detect the smell of alcohol about the person of Mr. Wilder because she did not attend to him.

Brian Shaver testified that he worked as a paramedic for Morristown E.M.S. He said he responded to the accident involving the defendant. Mr. Shaver said that Mr. Wilder was lying on top of the defendant. He said he assisted in removing the defendant and Mr. Wilder from the pick-up truck by using air bags to lift the pick-up truck off the ground. On cross-examination, Mr. Shaver acknowledged that both the defendant and Mr. Wilder were trapped on the driver's side of the pick-up truck. Mr. Shaver said that he did not notice the smell of alcohol on either the defendant or Mr. Wilder.

Gary Wilder testified that on March 7, 2004, he was a passenger in the pick-up truck driven by the defendant. He said that the defendant and Brian Moore had visited him at his house, that the defendant had been drinking, and that they decided to go for a ride in the defendant's pick-up truck. He said that the defendant was driving and that he had never stated otherwise. On cross-examination, Mr. Wilder acknowledged that he had felony convictions involving narcotics. He admitted that at the preliminary hearing, he testified that his memory of the accident was "kind of foggy." He admitted serving the defendant and Mr. Moore pure grain alcohol but denied drinking any himself.

The defendant testified that he was afraid of going to jail for something he did not do. He said he had previously pled guilty to a charge of DUI because he was guilty. He said, however, that he did not plead guilty this time because he was not guilty. He said that although he was drunk at

the time of the accident, he was not driving the pick-up truck. He said that on the day of the accident, Mr. Moore was driving his pick-up truck. He said he and Mr. Moore went to Mr. Wilder's house. He said that Mr. Wilder gave them pure grain alcohol to drink, that he became very drunk, and that he would have been satisfied "sleeping it off" at Mr. Wilder's house. He said the next thing he remembered was sitting in the passenger's seat of his pick-up truck.

The defendant said that after the accident, he inspected his pick-up truck and discovered that the driver's seat was in a different position from the last time he had driven it. He explained that because of his height, he always placed the driver's seat as far back as he could. He said that after the wreck, the seat was "slid forward." The defendant testified that his injuries from the accident were consistent with his having been seated in the passenger seat at the time of the accident. He said the injuries to the right side of his head were caused by the "crash handle," the injury to his left hand was caused by the dashboard, and that the injury to his left hip was caused by the seat belt receptacle on the passenger-side seat.

The defendant testified that Mr. Wilder's testimony was incredible. He said that in order for the jury to accredit Mr. Wilder's testimony, it would have to believe that Mr. Wilder, who testified that he was sober, went for a ride with the defendant, who had consumed twelve beers and pure grain alcohol. He said Mr. Wilder's testimony made no sense.

The defendant testified that he had recently bought the pick-up truck because he was going to be getting his driver's license back on Monday, March 8, 2004. He said he had been having Mr. Moore drive him in the pick-up truck because he wanted to be careful not to violate the law before regaining a valid driver's license.

On cross-examination, the defendant admitted that he did not know who was driving the pick-up truck because he could not remember the accident. He acknowledged, however, that he was drunk. The defendant denied having admitted to the emergency personnel that he was driving. He admitted, though, that because he did not remember the accident, he could have said anything.

Rick Williams testified that he was present near the scene of the accident and that after he heard the wreck, he went to investigate. He said he arrived to find the pick-up truck on its side. He said he was the first person on the scene. He said both Mr. Wilder and the defendant were behind the steering wheel.

Melissa Crittendon testified that she lived near the scene of the accident. She said that earlier in the day, she had seen the defendant's pick-up truck go past her house. She said that the defendant was seated in the passenger seat and that Brian Moore was driving. On cross-examination, Ms. Crittendon admitted she did not know who was driving the defendant's pick-up truck at the time of the accident.

In rebuttal, Angie Griffin testified that she lived near the scene of the accident. She said she spoke with the defendant at the scene. She said the defendant told her that he had been driving the

pick-up truck. On cross-examination, Ms. Griffin acknowledged signing two statements concerning the accident: one at the time of the accident and the other approximately one week later. She admitted neither statement said the defendant admitted being the driver. She explained, however, that she was only asked to relate what she had seen, not what she had been told.

Jay Jarnigan testified that as a part of his diagnosis procedure, he asked if a victim had been driving or wearing a seatbelt. He said he asked the defendant, who responded that he had been driving. On cross-examination, Mr. Jarnigan admitted that the notes he took of the accident did not have a statement by the defendant admitting to driving the pick-up truck. He admitted that he did, however, make notes of his conversation with the defendant regarding how much alcohol the defendant said he drank.

Carla Griffin testified that at the scene of the accident, the defendant told her that "he was afraid of going to jail" and that "he had been drinking and driving." On cross-examination, Ms. Griffin admitted that she did not make a report concerning the accident.

In surrebuttal, the defendant testified that he did not remember the accident. He said he "could have said the moon was blue."

## I. SUFFICIENCY OF THE EVIDENCE

On appeal, the defendant contends that the evidence is insufficient. He argues that the state failed to corroborate the testimony of Gary Wilder, whom he claims was his accomplice. The state contends the evidence was sufficient. We agree with the state.

Our standard of review when the defendant questions the sufficiency of the evidence on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). We do not reweigh the evidence; rather, we presume that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the state. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions about witness credibility were resolved by the jury. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997).

Tennessee Code Annotated section 55-10-401 states in pertinent part:

> (a) It is unlawful for any person to drive or to be in physical control of any automobile or other motor driven vehicle on any of the public roads and highways of the state, or on any streets or alleys, or while on the premises of any shopping center, trailer park or any apartment house complex, or any other premises which is generally frequented by the public at large, while:

(1) Under the influence of any intoxicant, marijuana, narcotic drug, or drug producing stimulating effects on the central nervous system
. . . .

Initially, we believe the defendant misapprehends his argument concerning corroboration. Essentially, the defendant is arguing that the state cannot prove the corpus delicti of the crime through uncorroborated accomplice testimony. We agree. However, we believe the record does not contain sufficient evidence for us to conclude that Mr. Wilder was the defendant's accomplice.

At the trial, various witnesses testified that the defendant was found in the driver's seat of the pick-up truck with his feet tangled in the pedals and that the defendant smelled of alcohol or admitted to drinking alcohol. Mr. Wilder testified that the defendant was driving. The defendant testified that although he did not remember the incident, he could not have been driving because his injuries were consistent with his having been in the passenger seat. He also claimed he would not have been driving because he was scheduled to be able to renew his license, which had been suspended because of a prior DUI conviction, on the following day. In rebuttal, various witnesses testified that the defendant admitted to being the driver. We conclude that a rational juror could have found beyond a reasonable doubt that the defendant was driving his car while under the influence of alcohol. The defendant is not entitled to relief on this issue.

## II. RULE 615

The defendant contends that Angie Griffin violated Rule 615 when she discussed her rebuttal testimony with other witnesses before those witnesses testified in rebuttal. He claims her contamination of the witnesses resulted in prejudice. The state responds that Ms. Griffin did not violate Rule 615, that the defendant has waived this issue, and that, in any event, the error was harmless.

At the trial, the following exchange took place after the state called Angie Griffin as its first rebuttal witness:

| | |
|---|---|
| [Defendant's attorney] | I'm told that this witness and the E.M.S. worker went to lunch with Garrett Morton today. |
| The Court: | Well – |
| [The state]: | And the problem would be – ? |
| [Defendant's attorney]: | Well, the problem – the problem – Well, no. She's a rebuttal witness, so that's not a problem. |

| The Court: | And you can ask her if there was a discussion. |
|---|---|
| [Defendant's attorney]: | Okay. That's fine. |

At the motion for new trial hearing, Melissa Crittendon testified that on the day of the trial, Angie Griffin went to lunch with Officer Morton and the female E.M.S. worker. She said that after Angie Griffin testified in rebuttal, Ms. Griffin walked into the hall where the other sequestered witnesses were seated and began discussing her testimony. Ms. Crittendon said Ms. Griffin told them that the defendant's attorney "had pissed her off" during cross-examination by continuing to ask her why she did not put in her statement the fact that the defendant admitted to driving the pick-up truck. Ms. Crittendon said that after Angie Griffin's tirade, Carla Griffin said, "I'm pregnant, my hormones are raging and I hope he don't do me like that because I'll get upset."

In denying the motion for new trial, the court stated:

> The first rebuttal witness who testified that the defendant had said he was driving had not been called on direct so there is no violation of sequestration as to her.
> When the witnesses were called in rebuttal, defense counsel made the court aware on the record of the alleged sequestration violation but withdrew the objection and vigorously cross-examined the witnesses.
> Rebuttal witnesses can be told of testimony in court that they are asked to rebut.
> There is no credible evidence that [the rebuttal] witnesses falsified their testimony.

Initially, we believe the state misapprehends the waiver issue. Regarding a violation of Rule 615 based upon the witnesses going to lunch with each other, we conclude the defendant waived the issue by withdrawing his objection and cross-examining the witnesses. See T.R.A.P. 36(a). However, Melissa Crittendon's testimony at the motion for new trial and the defendant's argument on appeal focus on statements made by Angie Griffin to other sequestered rebuttal witnesses after her testimony in rebuttal, which was necessarily after the defendant's objection. Essentially, the defendant is arguing that he is entitled to a new trial based upon his discovering after the trial that Angie Griffin violated Rule 615 and contaminated the other rebuttal witnesses. We will address this issue.

Rule 615 provides

> At the request of a party the court shall order witnesses, including rebuttal witnesses, excluded at trial or other adjudicatory hearing. In the court's discretion, the requested sequestration may be effective

before voir dire, but in any event shall be effective before opening statements. The court shall order all persons not to disclose by any means to excluded witnesses any live trial testimony or exhibits created in the courtroom by a witness. This rule does not authorize exclusion of (1) a party who is a natural person, or (2) a person designated by counsel for a party that is not a natural person, or (3) a person whose presence is shown by a party to be essential to the presentation of the party's cause. This rule does not forbid testimony of a witness called at the rebuttal stage of a hearing if, in the court's discretion, counsel is genuinely surprised and demonstrates a need for rebuttal testimony from an unsequestered witness.

Tenn. R. Evid. 615. The purpose of Rule 615 "is to prevent one witness from hearing the testimony of another and adjusting his testimony accordingly." State v. Harris, 839 S.W.2d 54, 68 (Tenn. 1992) (citing Smith v. State, 554 S.W.2d 648, 651 (Tenn. Crim. App. 1977)). In order for this court to grant relief based upon a Rule 615 violation, the defendant must show prejudice. See State v. Coulter, 67 S.W.3d 3, 52 (Tenn. Crim. App. 2001); State v. Anthony, 836 S.W.2d 600, 605 (Tenn. Crim. App. 1992).

We believe that if Melissa Crittendon's testimony at the motion for new trial hearing had been accredited by the trial court, it could have established a Rule 615 violation based upon Angie Griffin's statements to other rebuttal witnesses concerning her testimony in rebuttal. However, we conclude the defendant has failed to show the necessary prejudice, and he is not entitled to relief on this issue.

Based upon the foregoing and the record as a whole, we affirm the judgments of the trial court.

 

 

_____
JOSEPH M. TIPTON, JUDGE