IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
February 5, 2020 Session

## MICHELLE HENRY v. RICHARD H. HENRY

**Appeal from the Chancery Court for Putnam County**
**No. 2018-5   Ronald Thurman, Chancellor**

———————————————————

### No. M2019-01029-COA-R3-CV

———————————————————

In this divorce proceeding, Husband appeals the trial court's award of 60 percent of the marital assets to Wife, the holding that he had gifted his mother's ring to Wife, and the award of transitional alimony and alimony *in futuro* to Wife. Upon our review, we affirm the award of alimony and the holding that Husband gifted the ring to Wife, and hold that the issue of the division of the marital estate is waived.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and W. NEAL MCBRAYER, J., joined.

William A. Cameron, Cookeville, Tennessee, for the appellant, Richard H. Henry.

Randall A. York, Cookeville, Tennessee, for the appellee, Michelle Henry.

## OPINION

### I.   FACTUAL AND PROCEDURAL HISTORY

Michelle Henry ("Wife") and Richard Henry ("Husband") were married in Davidson County in 1995. Wife had two children from a previous marriage, and the parties had one child together. On January 11, 2018, Wife filed for divorce; trial was held on May 2, 2019, at which Wife, Husband, and Wife's adult daughter testified.

On May 10, the court entered an order awarding Wife a divorce on the grounds of cruel and inhuman treatment and inappropriate marital conduct; classifying the marital property and dividing it 60 percent to Wife and 40 percent to Husband; making Husband responsible for the parties' debt, including credit card debt, loans, lines of credit, and income taxes, fines, and penalties owed to the IRS for tax years 2011-2018; and finding

"that [Husband] made a gift of [his mother's] ring to [Wife]" and awarding the ring to Wife.  Further, the court sustained a motion for contempt filed by Wife, sentenced Husband to incarceration, and awarded Wife $15,000 as alimony *in solido* for attorney's fees for the prosecution of the motion.  The court awarded Wife transitional alimony of $5,500 per month for 30 months and, as additional transitional alimony, required Husband to continue to pay the premium on his life insurance policy, and to keep Wife as beneficiary on the policy until her 67th birthday (September 2028); and awarded alimony *in futuro* of $4,000 per month to begin after the period of transitional alimony.

Husband timely filed his notice of appeal and articulates the following issues:

1. Whether the trial court abused its discretion by awarding Husband's separate property to Wife based on testimony given by [Wife's adult daughter] in violation of Tennessee Rule of Evidence 615.
2. Whether the trial court abused its discretion by awarding Wife sixty percent (60%), and Husband forty percent (40%) of the martial property after ordering Husband to assume sole responsibility for the martial debt and IRS back taxes.
3. Whether the trial court abused its discretion in determining the type and amount of alimony.

## II. STANDARD OF REVIEW

As this case was tried without a jury, our review of the trial court's factual findings is *de novo* upon the record, accompanied by a presumption of the correctness of the findings, unless the preponderance of the evidence is otherwise. *See* Tenn. R. App. P. 13(d).  Our review of questions of law is *de novo*, with no presumption of correctness. *Armbrister v. Armbrister*, 414 S.W.3d 685, 692 (Tenn. 2013).

## III. ANALYSIS

### A. ISSUE 1: RULE OF SEQUESTRATION

In partial reliance on the testimony of Wife's adult daughter, the trial court concluded that Husband gifted his mother's ring to Wife and awarded it to her.  Husband contends that allowing Wife's daughter to testify regarding the ring violated Tennessee Rule of Evidence 615, since she had previously testified and remained in court to hear other testimony.[1]

---

[1] Rule 615 reads:

> At the request of a party the court shall order witnesses, including rebuttal witnesses, excluded at trial or other adjudicatory hearing. In the court's discretion, the requested sequestration may be effective before voir dire, but in any event shall be effective before

Husband asserts in his brief that he "raised [the] issue with the trial court that [Wife's daughter] had remained in the courtroom since her first testimony, thereby violating 'The Rule.'"[2]  Upon our review of the transcript and Husband's counsel's concession at oral argument, the record is clear that there was no objection raised at the time Wife's daughter testified regarding the ring.  "Failure to object [to] evidence in a timely and specific fashion precludes taking issue on appeal with the admission of the evidence." *Grandstaff v. Hawks*, 36 S.W.3d 482, 488 (Tenn. Ct. App. 2000); *see also* Tenn. R. Evid. 103(a)(1).[3]  Accordingly, because Husband failed to object to the testimony, this issue is waived.  Given the testimony in the record regarding the ring and

---

opening statements. The court shall order all persons not to disclose by any means to excluded witnesses any live trial testimony or exhibits created in the courtroom by a witness. This rule does not authorize exclusion of (1) a party who is a natural person, or (2) a person designated by counsel for a party that is not a natural person, or (3) a person whose presence is shown by a party to be essential to the presentation of the party's cause. This rule does not forbid testimony of a witness called at the rebuttal stage of a hearing if, in the court's discretion, counsel is genuinely surprised and demonstrates a need for rebuttal testimony from an unsequestered witness.

Commonly referred to as "the rule," *see Chamberlain v. Aetna Life & Cas. Ins. Co.*, 593 S.W.2d 661, 662 (Tenn. 1980), this Rule of Evidence is invoked "to prevent one witness from hearing the testimony of any other witness and adjusting his testimony in accord thereto." *Smith v. State*, 554 S.W.2d 648, 651 (Tenn. Crim. App. 1977).  Violations of the rule are addressed to the sound discretion of the trial court. *Chamberlain,* 593 S.W.2d at 662.

[2] The testimony which Husband cites to illustrate his objection is:

> MR. YORK [Counsel for Wife]: We may have to recall our first witness, and so I have placed her under the Rule in the back, depending on some things that come up in the cross-examination.
> THE COURT: Come on around, sir.
> MR. CAMERON [Counsel for Husband]: Been in the courtroom ever since.
> THE COURT: She has been.
> MR. YORK: This is on another issue.
> THE COURT: Come on up.

We have also read the specific testimony of the witness and, despite Husband's assertions in his brief, it is clear that he did not raise any objection to the witness's testimony about the ring.

[3] Tennessee Rule of Evidence 103(a)(1) states:

> **(a) Effect of Erroneous Ruling.** Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and
> (1) *Objection.* In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection if the specific ground was not apparent from the context[.]

the court's adverse credibility finding with respect to Husband's testimony,[4] we decline to disturb the trial court's holding that Husband gifted the ring to Wife and the award of the ring to her.

## B. ISSUE 2: DIVISION OF THE MARITAL ASSETS

Husband next argues that the court's 60 percent - 40 percent division of the marital assets in favor of Wife "was not consistent with the statutory factors in Tenn. Code Ann. § 36-4-121(c), and is not supported by a preponderance of the evidence." He argues that the evidence supports an award of 60 percent of the marital property to himself and that Wife should have received 40 percent, "or at the very least an equal fifty percent split (50%-50%)." Husband does not take issue with the court's classification or valuation of any assets.

Our standard of review of the division of marital property was set forth in *Forbess v. Forbess*:

> The division of marital property, including its classification and valuation are findings of fact. *Woodward v. Woodward,* 240 S.W.3d 825, 828 (Tenn. Ct. App. 2007). Trial courts have "wide latitude in fashioning an equitable division of marital property." *Altman v. Altman,* 181 S.W.3d 676, 683 (Tenn. Ct. App. 2005). Accordingly, the trial court's decisions regarding

---

[4] The order states that it found "the Defendant, and his testimony, is lacking in credibility." In its oral ruling, the trial court stated:

> I don't know that in the 30-some-odd years that I've been in this field, 13 years since I've been on the bench, that I've had a party admit they made as many -- told as many lies as Mr. Henry has. . . .

> I didn't find Mr. Henry credible. He admittedly lied over and over and over on court documents. At least on the first three exhibits and his interrogatories, he admitted he made -- gave false information on Exhibits 1, 2, and 3, and his interrogatory answers. The Court looks at his journal and his check register, which were made exhibits here. There is tens of thousands of dollars in discrepancy in those. So the Court really doesn't know what kind of money he makes, other than the fact that he can average $11,000 a month for the average of the last two years, which the Court finds he has the ability to pay. He even admitted that Ms. Henry had a need, he had the ability to pay some alimony. He didn't include, on his affidavits, that his roommate was paying him $4,800 a year. So it's hard for the Court to accept a whole lot of what Mr. Henry said due to the fact that he has repeatedly, in this Court's mind, lied about most of the things he testified to.

> So as a finding of fact as to credibility, the Court finds that Mr. Henry has no credibility before this Court, and that the Court accepts Miss Henry's credibility over Mr. Henry's.

classification, valuation and division of property are reviewed *de novo* with a presumption of correctness unless the evidence preponderates otherwise. *Farrar v. Farrar,* 553 S.W.2d 741, 743 (Tenn.1977).

370 S.W.3d 347, 354 (Tenn. Ct. App. 2011). In cases where the division of marital property is an issue on appeal, "Rule 7 of this Court requires 'the brief of the party raising the issue' to include, either in the body of the brief or as an appendix, a table of property and debt and their valuations.'" *Stearns-Smith v. Smith*, No. M2017-01902-COA-R3-CV, 2019 WL 3453360, at *3 (Tenn. Ct. App. July 31, 2019) (quoting Tenn. Ct. App. R. 7(a)). This table must "list all property and debts considered by the trial court, including (1) all separate property, (2) all marital property, and (3) all separate and marital debts" and "must include a citation to the record where each party's evidence regarding the classification or valuation of the property ... and ... where the trial court's decision regarding the classification, valuation, division, or allocation of the property ... can be found." Tenn. Ct. App. R. 7(a), (b). In *Stearns-Smith v. Smith*, this Court observed:

> We have described the Rule 7 table as "essential." *Blount v. Blount*, No. E2017-00243-COA-R3-CV, 2018 WL 1433198, at *3 (Tenn. Ct. App. Mar. 22, 2018); *Harden v. Harden*, No. M2009-01302-COA-R3-CV, 2010 WL 2612688, at *8 (Tenn. Ct. App. June 30, 2010). The table is so essential that a failure to comply with Rule 7 may be deemed a waiver of issues related to the classification, valuation, and division of property. *Forbess v. Forbess*, 370 S.W.3d 347, 354 (Tenn. Ct. App. 2011); *see also Blount*, 2018 WL 1433198, at *3 (holding that husband waived any challenges to the court's order granting wife a portion of his military pension for failure to comply with Rule 7); *Butcher v. Butcher*, No. W2011-01808-COA-R3-CV, 2012 WL 2107977, at *2 (Tenn. Ct. App. June 12, 2012) ("We have held that the failure to comply with Rule 7 of the Court of Appeals waives issues relating to the requirements of the Rule."); *Rountree v. Rountree*, 369 S.W.3d 122, 133 n.7 (Tenn. Ct. App. 2012) ("It is well settled that 'where an appellant fails to comply with this rule, that appellant waives all such issues relating to the rule's requirements.'" (quoting *Harden*, 2010 WL 2612688, at *8)).

*Stearns-Smith v. Smith*, No. M2017-01902-COA-R3-CV, 2019 WL 3453360, at *3 (Tenn. Ct. App. July 31, 2019). Husband's brief does not contain the table and consequently, we cannot perform our review.[5] Husband's failure to comply with Rule 7

---

[5] As this Court held *Forbess*:

> [A] table, in full compliance with Rule 7, is vital as this Court must consider the entire distribution of property in order to determine whether the trial court erred. Moreover, this Court is under no duty to minutely search the record for evidence that the trial court's valuations may be incorrect or that the distribution may be improper.

results in the waiver of the issue of the division of the marital property. We therefore affirm the court's division of the marital estate.

## C. ISSUE 3: ALIMONY

Tennessee recognizes four distinct types of spousal support: (1) alimony *in futuro*, (2) alimony *in solido*, (3) rehabilitative alimony, and (4) transitional alimony. Tenn. Code Ann. § 36-5-121(d)(1).[6]  In this case, the trial court awarded both transitional alimony and alimony *in futuro*; the portion of the final decree pertaining to alimony reads:

ALIMONY

22. Court finds that the Plaintiff is entitled to Alimony In Solido in the amount of $15,000.00 which shall be paid to the Plaintiffs attorney for the prosecution of the Motion for Criminal Contempt. This amount shall be paid within thirty (30) days from entry of this Order.

23. The Count finds that the Plaintiff is entitled to nonmodifiable transitional alimony in the amount of $5,500.00 per month. This amount shall be paid for a period of thirty (30) months. This payment shall begin on the first day of the month following entry of this decree and shall continue for a period of thirty months with the payment being due on the first day of each month thereafter. During this time, the Plaintiff shall continue to pay the household bills that she is currently paying except for the Defendant's life insurance, which shall become the responsibility of the Defendant.

24. As additional transitional Alimony, the Defendant shall continue to pay the premium on his life insurance. The Defendant currently has the Plaintiff listed as the beneficiary on this policy. The Defendant is enjoined

---

370 S.W.3d at 355 (Tenn. Ct. App. 2011) (quoting *Harden,* 2010 WL 2612688, at *8.

[6] Alimony *in futuro*, a form of long-term support, is appropriate when the economically disadvantaged spouse cannot achieve self-sufficiency and economic rehabilitation is not feasible. *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 107 (Tenn. 2011).  Alimony *in solido* is also "a form of long-term support," *id.* at 108, and "may be awarded in lieu of or in addition to any other alimony award, in order to provide support, including attorney fees, where appropriate." Tenn. Code Ann. § 36-5-121(d)(5).  Rehabilitative alimony is "a separate class of spousal support," Tennessee Code Annotated section 36-5-121(e)(1), the purpose of which is "to assist an economically disadvantaged spouse in acquiring additional education or training which will enable the spouse to achieve a standard of living comparable to the standard of living that existed during the marriage or the post-divorce standard of living expected to be available to the other spouse." *Gonsewski*, 350 S.W.3d at 108.  Finally, transitional alimony may be awarded "when the court finds that rehabilitation is not necessary, but the economically disadvantaged spouse needs assistance to adjust to the economic consequences of a divorce, legal separation or other proceeding where spousal support may be awarded." Tenn. Code Ann. § 36-5-121(g)(1).

from removing the Plaintiff as beneficiary on this policy until her 67th birthday which shall occur on September 20, 2028. The Defendant is further enjoined from allowing the policy to lapse for any reason. . . .

The Defendant shall pay to the Plaintiff Alimony In Futuro in the amount of Four Thousand ($4,000.00) per month. This payment shall be due and payable on the month following the termination of the transitional alimony described in paragraph twenty-two (22) above. This payment shall be due on the first day of each month. This award of alimony in futuro shall remain in the court's control for the duration of such award, and may be increased, decreased, terminated, extended or otherwise modified upon a showing of substantial and material change in circumstances, including the Plaintiff living with a third person. This award shall terminate automatically and unconditionally upon the death or remarriage of the Plaintiff. Pursuant to T.C.A. §36-5-121 (f) (2) (B), should the Plaintiff cohabit with any third person, a rebuttable presumption is raised that (i) The third person is contributing to the support of the alimony recipient and the alimony recipient does not need the amount of support previously awarded, and the court should suspend all or part of the alimony obligation of the former spouse; or (ii) The third person is receiving support from the alimony recipient and the alimony recipient does not need the amount of alimony previously awarded and the court should suspend all or part of the alimony obligation of the former spouse.

The Plaintiff shall notify the Defendant immediately should she remarry. This alimony obligation shall not end upon the death of the Defendant.

In its oral ruling, the trial court stated:

The Court finds that there should be a period of transitional alimony which occurs for a period of 30 months. That's in the amount of $5,500 per month, and to cover this 30-month period. During that period, she'll continue to pay the expenses on the mortgage until it's sold and these bills, with the exception of Mr. Henry's life insurance policy, and he'll be responsible for that, but he will make her a beneficiary on the policy to secure payment of alimony to age 67.

As it relates to rehabilitative alimony, the Court does not find that, due to Ms. Henry's age and trying to rehabilitate herself and undereducation, going in the education field, I don't think she's going to be competitive in the education market starting out at age 62 or 63. I just — I just don't think she's — any school system is going to hire a 62-year-old woman with

health problems to compete with someone that's just out of school at 21 that has less expense as it might relate to insurance, being off of work. I just don't — I don't accept that argument. I understand that's the argument made, but I don't think that's reasonably -- a reasonable expectation that she would be successful in that.

However, I think she should be entitled to in futuro. I think she obviously is a well-spoken lady, an intelligent lady. She's not got any transferable job skills. But I think that in light of the division of property here, since she's gotten 60 percent of the property, that gives her some cushion to seek out whatever type of avenue of employment she might wish in the future to earn her at least a minimum wage job, maybe even more. That would be up to her. I'm not going to pick what kind of area she goes into. If she wants to go into education, she's got the money to do this. Along with this Tennessee Promise, as she discussed, this will be more than enough to cover that.

After the 30-month period, she'll be entitled to receive $4,000 a month in alimony in futuro until she remarries or cohabitates or -- as governed by the Tennessee state law.[7]

Husband argues that the trial court erred in awarding both transitional alimony and alimony *in futuro* to Wife because "alimony in futuro is not appropriate. Wife is a perfect candidate for transitional alimony because she already possesses the skills she needs to be self-sufficient, and adjust to the single life." In addition, he argues that the award of alimony *in futuro* was an abuse of the court's discretion "because Wife's needs are unreasonable, and Husband does not have the current ability to pay"; alternatively, he argues that only alimony *in futuro* was appropriate and asks this court to modify the award to an amount that reflects his current diminished financial situation.

There are no hard and fast rules for spousal support decisions. *Anderton v. Anderton*, 988 S.W.2d 675, 682 (Tenn. Ct. App. 1998); *Crain v. Crain*, 925 S.W.2d 232, 233 (Tenn. Ct. App. 1996). In determining whether to award spousal support, the trial court is required to consider the relevant factors at Tennessee Code Annotated section 36-5-121(i).[8] "While a trial court should consider all the relevant factors under the

---

[7] The oral ruling was not incorporated into and made a part of the Final Decree; however, it provides insight into the court's reasoning as it ruled on this issue.

[8] Those factors set forth in Tennessee Code Annotated section 36-5-121(i)are:

(1)    The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;

circumstances, the two most important factors to be considered are the need of the economically disadvantaged spouse and the obligor spouse's ability to pay." *Small v. Small*, No. M2009-00248-COA-R3-CV, 2010 WL 334637, at *3 (Tenn. Ct. App. Jan. 28, 2010) (citing *Riggs v. Riggs,* 250 S.W.3d 453, 457 (Tenn. Ct. App. 2007)). Of these two factors, "the primary consideration is the disadvantaged spouse's need." *Id.* In our review of the trial court's decision, we apply the standard set forth in *Gonsewski v. Gonsewski:*

> [A] trial court's decision regarding spousal support is factually driven and involves the careful balancing of many factors. *Kinard v. Kinard,* 986 S.W.2d 220, 235 (Tenn. Ct. App. 1998); *see also Burlew [v. Burlew],* 40 S.W.3d [465] at 470 [(Tenn. 2001)]; *Robertson v. Robertson,* 76 S.W.3d 337, 340–41 (Tenn. 2002). As a result, "[a]ppellate courts are generally disinclined to second-guess a trial judge's spousal support decision." *Kinard,* 986 S.W.2d at 234. Rather, "[t]he role of an appellate court in reviewing an award of spousal support is to determine whether the trial court applied the correct legal standard and reached a decision that is not clearly unreasonable." *Broadbent v. Broadbent,* 211 S.W.3d 216, 220 (Tenn. 2006). Appellate courts decline to second-guess a trial court's decision absent an abuse of discretion. *Robertson,* 76 S.W.3d at 343. An abuse of discretion occurs when the trial court causes an injustice by applying an incorrect legal standard, reaches an illogical result, resolves the

---

(2) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earnings capacity to a reasonable level;

(3) The duration of the marriage;

(4) The age and mental condition of each party;

(5) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(6) The extent to which it would be undesirable for a party to seek employment outside the home, because such party will be custodian of a minor child of the marriage;

(7) The separate assets of each party, both real and personal, tangible and intangible;

(8) The provisions made with regard to the marital property, as defined in § 36-4-121;

(9) The standard of living of the parties established during the marriage;

(10) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(11) The relative fault of the parties, in cases where the court, in its discretion, deems it appropriate to do so; and

(12) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice. *Wright ex rel. Wright v. Wright,* 337 S.W.3d 166, 176 (Tenn. 2011); *Henderson v. SAIA, Inc.,* 318 S.W.3d 328, 335 (Tenn. 2010).

350 S.W.3d 99, 105 (Tenn. 2011) (footnote omitted).

The evidence clearly supports the determination that an award of alimony was warranted; indeed, Husband concedes that Wife has a need for support. The issue we address is whether the court abused its discretion in the type, duration, and amount of the award.

Wife testified that she was 58 years old, has a tenth-grade education and a GED certificate; that she did not work outside the home, save for a brief 8-week stint, during the course of the marriage; and that she has no work experience or transferable job skills. In the division of marital assets, Wife received $16,000 cash to assist with the expenses associated with an upcoming surgery, 60 percent of funds held in Husband's counsel's trust account as proceeds from the sale of property, and 60 percent of the money in a joint bank account. She also received two burial lots and a vehicle, and 60 percent of Husband's retirement accounts. Wife's income and expense statement showed that she has approximately $9,000 per month in expenses.

Husband's initial income statements, admitted as exhibits at trial, showed that he made more than $10,000 a month in income; Husband testified at trial that his income had been reduced to approximately $4,000 per month and acknowledged that he had submitted three affidavits that understated his income. As noted earlier, the trial court made an adverse credibility finding with respect to Husband's testimony. Giving due deference to the adverse credibility finding and considering the record as a whole, the court did not abuse its discretion in holding that Husband had the ability to earn $11,000 per month and to pay the amount awarded.

Transitional alimony assists the disadvantaged spouse with the "transition to the status of a single person." *Gonsewski*, 350 S.W.3d at 109. While rehabilitative alimony "is designed to increase an economically disadvantaged spouse's *capacity* for self-sufficiency, transitional alimony is designed to aid a spouse who already possesses the capacity for self-sufficiency but needs financial assistance in adjusting to the economic consequences of establishing and maintaining a household without the benefit of the other spouse's income." *Id.*

The parties were married for more than 23 years and enjoyed a comfortable standard of living. Husband and Wife both testified that Husband worked as a salesman earning significant income while Wife took care of the home and children, who have all attained the age of majority. Given the disparate earning capacities of the parties, Wife's

status as the economically disadvantaged party, her expenses, and the court's acknowledgement that rehabilitation was not feasible for her, we conclude that the award of transitional alimony in the amount of $5,500 per month for 30 months is supported by the evidence and not clearly unreasonable; accordingly, we affirm this award.

Similarly, the proof established many of the statutory factors supporting an award of alimony *in futuro*—including Wife's need for support, the duration of the marriage, the parties' relative earning capacities, and Wife's contributions to the marriage as homemaker and parent. Significant, also, is the trial court's determination that rehabilitation is not feasible, and that an award of long-term support is necessary. *See Gonsewski*, 350 S.W.3d at 109 ("[T]here is a statutory bias toward awarding transitional or rehabilitative alimony over alimony *in solido* or *in futuro* [; w]hile this statutory preference does not entirely displace long-term spousal support, alimony *in futuro* should be awarded only when the court finds that economic rehabilitation[9] is not feasible and long-term support is necessary.") (citing *Bratton v. Bratton,* 136 S.W.3d 595, 605 (Tenn. 2004); *Robertson v. Robertson,* 76 S.W.3d 337, 341-42 (Tenn. 2002)).

Husband argues that the amount awarded was an abuse of discretion, given the current depressed state of his income. As noted above, the amount awarded is supported by the pertinent factors at section 36-5-121(i) and the testimony of Husband's ability to earn significant income and therefore to pay. Taken together, the award allows Wife to adjust to the immediate economic consequences of the divorce and the loss of the support furnished to the family by Husband, as breadwinner, and to recognize the practical realities of entering into the workforce at age 58 with limited education and work skills.[10]

---

[9] In this context, "rehabilitated" means that, with reasonable efforts, the economically-disadvantaged spouse will be able to achieve:

> . . . an earning capacity that will permit the economically disadvantaged spouse's standard of living after the divorce to be reasonably comparable to the standard of living enjoyed during the marriage, or to the post-divorce standard of living expected to be available to the other spouse, considering the relevant statutory factors and the equities between the parties.

Tenn. Code Ann. § 36-5-121(e)(1).

[10] Tennessee Code Annotated section 36-5-121(f) states in pertinent part:

> (f)(1) Alimony in futuro, also known as periodic alimony, is a payment of support and maintenance on a long term basis or until death or remarriage of the recipient. Such alimony may be awarded when the court finds that there is relative economic disadvantage and that rehabilitation is not feasible, meaning that the disadvantaged spouse is unable to achieve, with reasonable effort, an earning capacity that will permit the spouse's standard of living after the divorce to be reasonably comparable to the standard of living enjoyed during the marriage, or to the post-divorce standard of living expected to be available to the other spouse, considering the relevant statutory factors and

The court did not abuse its discretion in crafting the award. Inasmuch as the award of alimony *in futuro* is subject to modification, Husband has the ability to receive a reduction in the amount of alimony *in futuro* upon petition and proper showing to the court.

## D. WIFE'S MOTION FOR FEES ON APPEAL

Wife has asked for an award of her attorney's fees on appeal.[11] Under the version of Tennessee Code Annotated section 36-5-103(c) in effect at the time Wife filed for divorce, such a decision is within our discretion. Upon consideration of the appropriate factors and in our discretion, we deny Wife's request for attorney's fees.

## E. MOTION TO SUPPLEMENT THE RECORD

While this case was pending on appeal but before oral argument was held, Wife moved pursuant to Rules 14(a) and 24 of the Rules of Appellate Procedure to supplement the record on appeal with an order entered by the trial court on December 23 and, separately, to consider post judgment facts; both motions pertained to Husband's earnings, which had been presented in a hearing on a petition to hold him in criminal contempt. Husband responded to the motion. This Court entered an order on January 7, 2020, reserving judgment on Wife's motion pending oral argument. In light of the resolution of this appeal, we deny the motions without prejudice to either party's ability to present further evidence to the trial court as to matters occurring since the trial that resulted in the order under appeal; a separate order will be entered.

## IV. CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed.

_____
RICHARD H. DINKINS, JUDGE

---

the equities between the parties.

(2)(A) An award of alimony in futuro shall remain in the court's control for the duration of such award, and may be increased, decreased, terminated, extended, or otherwise modified, upon a showing of substantial and material change in circumstances.

[11] The other issues Wife has raised are pretermitted by our resolution of the issues raised by Husband.